

# JOHNSON, CASSIDY, NEWLON & DeCORT

### ATTORNEYS AT LAW

**FILED**

Katherine C. Donlon, Esquire

**MAY 1 2 2022**

E-mail: kdonlon@jclaw.com
Direct Dial: 813-291-3300

May 11, 2022    CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

Clerk of the United States District Court

**Re:    Federal Trade Commission v. Michael Rando, et al.**
**Case No. 3:22-cv-00487-TJC-MCR (M.D. Fla.)**

Dear Clerk of the Court:

**2:22 - MC 0 1 5 4 - KJM AC**

I represent Maria Yip, the court-appointed Receiver (the "Receiver") in the above-referenced matter, which is pending in the U.S. District Court for the Middle District of Florida, Jacksonville Division (the "M.D. Fla. Receivership"). To obtain jurisdiction over property located in other districts, the Receiver must "within ten days after the entry of her order of appointment, file copies of the complaint and such order of appointment in the district court for each district in which property is located." 28 U.S.C. § 754.

Enclosed, pursuant to 28 U.S.C. § 754, please find the following documents from the M.D. Fla. Receivership: (1) a copy of the Complaint; (2) a copy of the *Ex Parte* Temporary Restraining Order with Asset Freeze, Appointment of a Temporary Receiver, and Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue ("Appointment Order"), and (3) a Civil Cover Sheet. Although these documents were temporarily filed under seal, they are now publicly available. For reference, I have also enclosed a copy of the docket sheet, showing all parties and their counsel. Finally, I have enclosed a check in the amount of $49.00 for any filing fee.

The Complaint and Appointment Order are to be filed as a miscellaneous action pursuant to 28 U.S.C. § 754. Although I have enclosed a check in the amount of $49.00, it my understanding that because the Federal Trade Commission is a federal government entity and secured the appointment of the Receiver, the filing fee may be waived. Accordingly, I ask that you waive the filing fee and return the enclosed check.

Aside from docketing the Complaint and Appointment Order pursuant to 28 U.S.C. §754, neither the Clerk nor the Court need take any additional action. If you have any questions, please do not hesitate to contact me.

Sincerely,

JOHNSON, CASSIDY, NEWLON & DeCORT, P.A.

Katherine C. Donlon

KCD/mm
Enclosures

cc:    Maria Yip, Receiver

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

FEDERAL TRADE COMMISSION,

    Plaintiff,

    v.

MICHAEL RANDO, a/k/a Mike Singles,
individually and as a principal of Prosperity
Training Technology LLC, Elite Customer
Services, LLC, Digital Business Scaling
LLC, First Coast Matchmakers Inc., First
Coast Matchmakers LLC, and Financial
Consulting Management Group LLC,

VALERIE RANDO, a/k/a Valerie Payton,
Val Rando, and Val Singles, individually
and as a principal of Prosperity Training
Technology LLC, Elite Customer Services,
LLC, Digital Business Scaling LLC, First
Coast Matchmakers Inc., First Coast
Matchmakers LLC, and Financial
Consulting Management Group LLC,

PROSPERITY TRAINING
TECHNOLOGY LLC, a Florida limited
liability company, also d/b/a The Credit
Game, The Credit Game University, and
Elite Deletions,

ELITE CUSTOMER SERVICES, LLC, a
Florida limited liability company,

DIGITAL BUSINESS SCALING LLC, a
Florida limited liability company,

FIRST COAST MATCHMAKERS INC., a
Florida corporation, also d/b/a Wholesale
Tradelines,

Case No. 2:22 - MC 0 1 5 4 - KJM AC

**COMPLAINT FOR
PERMANENT INJUNCTION,
MONETARY RELIEF, AND
OTHER RELIEF**

**(DOCUMENT SUBMITTED
UNDER SEAL)**

FIRST COAST MATCHMAKERS LLC, a
Florida limited liability company, also
d/b/a Wholesale Tradelines,

FINANCIAL CONSULTING
MANAGEMENT GROUP LLC, a Florida
limited liability company, and

RESOURCE MANAGEMENT
INVESTMENTS, LLC, a Florida limited
liability company,

        Defendants.

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1.      The FTC brings this action under Sections 13(b) and 19 of the Federal

Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b; Section 410(b) of

the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679h(b); Section 6(b)

of the Telemarketing and Consumer Fraud and Abuse Prevention Act

("Telemarketing Act"), 15 U.S.C. § 6105(b); Section 1401(c)(1) of the COVID-19

Consumer Protection Act of the 2021 Consolidated Appropriations Act ("COVID-19

Consumer Protection Act" or "CCPA"), 15 U.S.C. § 45 note (Prohibiting Deceptive

Acts or Practices in Connection With the Novel Coronavirus ("CCPA") §

1401(c)(1)); and the FTC's Trade Regulation Rule entitled "Disclosure Requirements

and Prohibitions Concerning Business Opportunities" ("Business Opportunity Rule"

or "BOR"), 16 C.F.R. Part 437; which authorizes the FTC to seek, and the Court to

order, temporary, preliminary, and permanent injunctive relief, an asset freeze, the

appointment of a receiver, immediate access to the Defendants' business premises and documents, an accounting of assets, monetary relief, and other relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a); multiple provisions of CROA, 15 U.S.C. §§ 1679-1679j; multiple provisions of the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310; Section 1401(b)(2) of the COVID-19 Consumer Protection Act, 15 U.S.C. § 45 note (CCPA § 1401(b)(2)); and multiple provisions of the BOR, 16 C.F.R. Part 437. Defendants' violations are in connection with the marketing and sale of credit repair services and the marketing and sale of business or investment opportunities.

## SUMMARY OF CASE

2. Since at least 2019, Defendants have operated an unlawful credit repair business that has deceived consumers across the country. Through YouTube videos, websites, email marketing, and telemarketing, Defendants claim they can quickly and legally improve consumers' credit scores to over 780, remove most or all negative items on a consumer's credit report, and cause a third party's credit history to appear on the consumer's credit report. Defendants strengthen these representations with a money-back guarantee.

3. Defendants' claims, however, are false or unsubstantiated. Defendants have also filed, or caused to be filed, fake identity theft reports on the FTC's identitytheft.gov website as part of their credit repair scheme. In addition, Defendants routinely take prohibited advanced fees of hundreds, or even thousands,

3

of dollars for their credit repair services and do not make required disclosures regarding their credit repair services.

4. Defendants have also sold deceptive business or investment opportunities. Through YouTube videos, websites, and telemarketing, Defendants claim consumers can profitably and legally operate a business selling credit repair services and education, including advising consumers they can or should manipulate the appearance of true information on credit reports and add false positive information on credit reports. These claims are false or unsubstantiated. In addition, Defendants do not make required disclosures regarding their business opportunity.

5. Defendants have also sold their products and services by instructing consumers to spend or otherwise "invest" their various tax credit benefits issued under separate COVID-19 relief laws on Defendants' deceptive credit repair scheme.

6. Defendants claim to have generated more than $15,000,000 in revenue from their unlawful credit repair and education, and business or investment opportunity practices.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345.

8. Venue is proper in this District under 28 U.S.C. § 1391(b)(1), (b)(2), (c)(1), (c)(2), and (d), and 15 U.S.C. § 53(b).

4

## PLAINTIFF

9.     The FTC is an independent agency of the United States Government
created by the FTC Act, which authorizes the FTC to commence this district court
civil action by its own attorneys.   15 U.S.C. §§ 41-58.   The FTC enforces Section
5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or
practices in or affecting commerce.   The FTC also enforces CROA, 15 U.S.C. §§
1679-1679j, which prohibits, among other things, untrue or misleading
representations to induce the purchase of credit repair services, requires certain
affirmative disclosures in the offering or sale of credit repair services, and prohibits
credit service organizations from charging or receiving money or other valuable
consideration for the performance of credit repair services before such services are
fully performed.   The FTC also enforces the Telemarketing Act, 15 U.S.C. §§ 6101-
08.   Pursuant to the Telemarketing Act, the FTC promulgated and enforces the
TSR, 16 C.F.R. Part 310, which prohibits deceptive and abusive telemarketing acts
or practices.   The FTC also enforces the COVID-19 Consumer Protection Act, 15
U.S.C. § 45 note (CCPA § 1401), which prohibits, among other things, deceptive acts
or practices associated with a government benefit related to COVID-19 for the
duration of the COVID-19 public health emergency.   The FTC also enforces the
BOR, 16 C.F.R. Part 437, which prohibits certain misrepresentations and requires
specific disclosures in connection with the sale of a business opportunity.

**DEFENDANTS**

10.     Defendant **Prosperity Training Technology LLC** ("Prosperity"), also

doing business as The Credit Game, The Credit Game University, and Elite

Deletions, is a Florida limited liability company with its principal place of business at

14286 Beach Blvd., Suite 19-207, Jacksonville, FL 32250.   It also does business at

13107 Atlantic Blvd., Suite 201, Jacksonville, FL 32225.   Prosperity transacts or has

transacted business in this District and throughout the United States.   At times

material to this Complaint, acting alone or in concert with others, Prosperity has

advertised, marketed, distributed, or sold credit repair services and business or

investment opportunities to consumers throughout the United States.

11.     Defendant **Elite Customer Services, LLC** ("Elite Services") is a

Florida limited liability company with its principal place of business at 12527 Charles

Cove Road, Jacksonville, FL 32246.   It also does business at 13107 Atlantic Blvd.,

Suite 201, Jacksonville, FL 32225.   Elite Services consults with and onboards

consumers that purchase Defendants' credit repair services.   Elite Services transacts

or has transacted business in this District and throughout the United States.   At

times material to this Complaint, acting alone or in concert with others, Elite

Services has advertised, marketed, distributed, or sold credit repair services and

business or investment opportunities to consumers throughout the United States.

12.     Defendant **Digital Business Scaling LLC** ("Digital Scaling") is a

Florida limited liability company with its principal place of business at 14286 Beach

Blvd., 19-190, Jacksonville, FL 32250.   Digital Scaling transacts or has transacted business in this District and throughout the United States.   At times material to this Complaint, acting alone or in concert with others, Digital Scaling has advertised, marketed, distributed, or sold credit repair services and business or investment opportunities to consumers throughout the United States.

13.     Defendant **First Coast Matchmakers Inc.** ("First Coast Inc."), also doing business as Wholesale Tradelines, is a Florida corporation with its principal place of business at 13245 Atlantic Blvd., Suite 4-307, Jacksonville, FL 32225.   First Coast Inc. transacts or has transacted business in this District and throughout the United States.   At times material to this Complaint, acting alone or in concert with others, First Coast Inc. has advertised, marketed, distributed, or sold credit repair services to consumers throughout the United States.

14.     Defendant **First Coast Matchmakers LLC** ("First Coast LLC"), also doing business as Wholesale Tradelines, is a Florida limited liability company with its principal place of business at 13810 Sutton Park Drive, #524, Jacksonville, FL 32224.   It also does business at 13245 Atlantic Blvd., Suite 4-307, Jacksonville, FL 32225.   First Coast LLC transacts or has transacted business in this District and throughout the United States.   At times material to this Complaint, acting alone or in concert with others, First Coast LLC has advertised, marketed, distributed, or sold credit repair services to consumers throughout the United States.

7

15.     Defendant **Financial Consulting Management Group LLC**
("Financial Consulting") is a Florida limited liability company with its principal
place of business at 1015 Atlantic Blvd., Unit 86, Atlantic Beach, FL 32233.
Financial Consulting was the "holding company" for Defendants' enterprise while
operating as Wholesale Tradeline.   Financial Consulting transacts or has transacted
business in this District and throughout the United States.   At times material to this
Complaint, acting alone or in concert with others, Financial Consulting has
advertised, marketed, distributed, or sold credit repair services to consumers
throughout the United States.

16.     Defendant **Resource Management Investments, LLC** ("Resource
Management") is a Florida limited liability company with its principal place of
business at 12770 Lochren Road, Jacksonville, FL 32246.   It also does business at
12527 Charles Cove Road, Jacksonville, FL 32246.   Resource Management
transacts or has transacted business in this District and throughout the United States.
At times material to this Complaint, acting alone or in concert with others, Resource
Management has advertised, marketed, distributed, or sold credit repair services to
consumers throughout the United States.

17.     Defendant **Michael Rando**, also known as Mike Singles ("Mr.
Rando"), is the manager, member, and registered agent of Prosperity.   He is also the
registered agent and manager of Financial Consulting.   In addition, he owns or
controls Elite Services, Digital Scaling, First Coast Inc., First Coast LLC, and

8

Resource Management.   At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in, and had at least some knowledge of, the acts and practices set forth in this Complaint.   Mr. Rando resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

18.     Defendant **Valerie Rando**, also known as Valerie Payton, Val Rando, and Val Singles ("Ms. Rando," together with Mr. Rando "the Randos"), was the CEO of Wholesale Tradelines and was a registered officer and registered agent of Prosperity.   She is a registered manager and a member of Digital Scaling.   In addition, she is the President of First Coast Inc. and the registered agent and manager of First Coast LLC.   Ms. Rando also owns or controls Elite Services, Financial Consulting, and Resource Management.   At all times material to this Complaint, acting alone or in concert with others, she has formulated, directed, controlled, had the authority to control, or participated in, and had at least some knowledge of, the acts and practices set forth in this Complaint.   Ms. Rando resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

## COMMON ENTERPRISE

19.     Defendants Prosperity, Elite Services, Digital Scaling, First Coast Inc., First Coast LLC, Financial Consulting, and Resource Management (collectively,

"Corporate Defendants") have operated as a common enterprise while engaging in
the deceptive and unlawful acts and practices and other violations of law alleged
below. Corporate Defendants have conducted the business practices described
below through an interrelated network of companies that have common ownership,
officers, managers, business functions, employees, and office locations, and that
commingled funds. Because the Corporate Defendants have operated as a common
enterprise, each is liable for the acts and practices alleged below.

## COMMERCE

20.     At all times material to this Complaint, Defendants have maintained a
substantial course of trade in or affecting commerce, as "commerce" is defined in
Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS PRACTICES

### Background on Credit Scores and Reports

21.     A credit score is a number used to predict the likelihood a consumer
will repay a loan. Prospective creditors use credit scores as part of an underwriting
process to assess whether to offer a consumer credit and to determine key terms of
any such credit, including the interest rate and the credit limit. Credit scores are
calculated using statistically-based credit risk evaluation systems, commonly known
as credit scoring systems. Consumers do not have just one credit score: there are
multiple different credit score providers and models, each of which may rely on
different sources for credit file data and may use otherwise similar data in different
ways. Credit score providers generally do not publicly disclose the weight they

10

assign to individual changes in credit history, or how their scoring models differ from those of other providers.

22.     Fair Isaac Corporation ("FICO") is one of the largest providers of consumer credit scores. A consumer's FICO score is a number between 300 and 850, with higher scores indicating greater creditworthiness. Consumers with higher FICO scores are more likely to receive credit, and on better terms, than consumers with lower scores. FICO uses payment history, outstanding debts, length of credit history, pursuit of new credit, and the different types of credit a consumer has on file to determine a consumer's FICO score.

23.     An "inquiry" occurs when a consumer's credit score is checked. A "hard inquiry" occurs when a prospective creditor checks a consumer's credit score or report after the consumer applies for new credit. Hard inquiries within one year are generally considered by FICO, but minimally impact a consumer's credit score. A "soft inquiry" occurs when a consumer's credit report or score is pulled without the consumer applying for credit, or when a consumer pulls his or her own credit report or score. Soft inquiries have no impact on a consumer's FICO credit score.

24.     A "tradeline" is any credit account that is reported on a consumer's credit report.

25.     Normally, an "authorized user tradeline" is a credit account reported on a consumer's credit report indicating the credit account is held by another

11

individual, typically the account holder's spouse, but, in any event, where the consumer has been authorized to use the account.

26.     "Credit piggybacking" is a term used to describe a tradeline held by a credit account holder with positive account characteristics, such as a low utilization rate or a longstanding account, on which an unrelated consumer pays to become an "additional authorized user," but without gaining access or having the ability to use the credit account.   For clarity, this Complaint uses the terms "authorized user tradeline" and "credit piggybacking" synonymously.

## Defendants' Marketing Platforms

27.     To induce consumers to purchase their credit repair services, Defendants primarily rely on posting near-daily videos to YouTube, where Defendants have 475,000 subscribers.   Defendants also advertise through various websites, marketing emails, and in-bound telemarketing phone calls.   Beginning in 2020, Defendants began selling credit repair business or investment opportunities using the same marketing platforms.

## Defendants Acquired Tradelines From a Prior FTC Defendant

28.     In December of 2019, Defendants purchased a "Cardholder Database" of 220 cardholders, controlling 524 credit accounts, who were willing, for a fee, to add unrelated authorized users to their accounts from William Airy, CEO of BoostMyScore LLC, and BMS, Inc. (Airy and these companies, collectively, "BMS").   The Randos, through First Coast Inc., purchased the Cardholder Database for $152,500.

12

29.     At the time of the sale, the FTC and BMS were engaged in non-public settlement negotiations to resolve allegations that BMS violated various laws enforced by the FTC, including by selling authorized user tradelines.

30.     The FTC filed a complaint against BMS on March 6, 2020, alleging violations of the FTC Act, the CROA, and the TSR, for among other things, selling authorized user tradelines. *FTC v. BoostMyScore LLC*, No. 20-cv-00641-PAB-STV (D. Colo.) [D.E. #1].  Simultaneously, the FTC and BMS submitted a proposed stipulated order to resolve the lawsuit, which that court entered on April 17, 2020. [D.E #14].

31.     Before BMS sold the Cardholder Database to the Randos, both sides agreed to a Letter of Intent.

32.     Pursuant to the Letter of Intent, Mr. Airy agreed that he would not voluntarily disclose the transaction to the FTC and both BMS and the Randos disclaimed the legality of operating a business selling authorized user tradelines, stating:

> First Coast Matchmakers [Inc.] is aware of BMS' situation with the FTC and understands the risks of operating a tradeline business. Particularly that at any time, a regulator can investigate the operations of any business and force it to cease operations, rendering the assets of this sale unusable. BMS makes no warranty or guarantee regarding any kind of merchantability of these assets, particularly should something like that ever happen to First Coast Matchmakers [Inc].

33.     During negotiations, the Randos requested that Mr. Rando's name be removed from the contract, but Mr. Rando's email address is listed as a point of contact for First Coast Inc.   BMS and the Randos ultimately completed the

13

agreement, with Ms. Rando entering into the agreement on behalf of First Coast Inc.

The Randos then used Resource Management to pay BMS for the Cardholder

Database on December 30, 2019.

**Defendants Deceive Consumers Regarding Credit Repair Services and Products**

34.     Defendants, in YouTube Videos, on their websites, in marketing emails,

and in telemarketing calls, claim they will increase a consumer's credit score "fast,"

including in as little at 45 days from as low as the 500s to the 700s or higher.   They

claim they achieve such dramatic results by removing negative information and

adding positive information to a consumer's credit report.

35.     For example, prior to 2020 while operating as Wholesale Tradelines,

Defendants claimed on their website that they could improve a consumer's credit

score by removing negative information from a consumer's credit report by offering

services such as "Credit Sweeps" and "Inquiry Removal":



36.     In another example, Defendants claimed they will increase a

consumer's credit score by causing a third party's credit history to appear on the

consumer's credit report, typically through credit piggybacking.   Wholesale

14

Tradeline's website claimed that tradelines are the "smartest, fastest way to **BOOST** your credit score":



37.     The website further claimed that credit piggybacking, helps consumers because:

> Broad regulations and legal loopholes allow for you to benefit from being an authorized user on another person's tradeline (also known as 'credit piggybacking'). . . .   In other words, once you are added as an authorized user to an account, the history of that account appears on 'your' credit report and will be treated as if it was 'your' credit history.

38.     Defendants announced in a February 14, 2020 YouTube video titled "ANNOUNCEMENT: Moving Forward With The Credit Game," that they were closing the "portion of the company" known as Wholesale Tradelines, which "add[s] authorized users and credit repair" because they were shifting into the "education space."

39.     In the video, Mr. Rando told consumers: "[y]ou might have dealt with people before that were scams, but I can assure I won't be one of those.   Any previous order before February 10th will be handled.   I'm not running off with money.   I'm not not going to add tradelines.   I'm not gonna not finish out the credit

15

repair." He continued saying that Defendants still had "major staff" operating to fulfill "every single order."

40. Mr. Rando further reassured his viewers "we're not going anywhere, okay. I'm staying in the same office, all the employees are staying for the most part, and we're gonna continue to grow this education space."

41. In fact, Defendants' move from Wholesale Tradelines to The Credit Game was nothing more than a rebranding. Defendants continue to provide credit repair services, ostensibly for free when consumers purchase their "education services." This rebranding also saw Defendants expand into selling business or investment opportunities for consumers to create their own tradeline and credit repair companies – as set forth in Paragraphs 122-138, below.

42. Now operating as The Credit Game, Defendants currently offer variously named credit repair and business or investment opportunity packages, including "Maserati," "Lambo" (*i.e.*, short for Lamborghini), "Associates," and "Masters," which cost consumers thousands of dollars, depending on the type of package purchased. Most of these packages come with direct credit repair services in which Defendants claim they will "fix" a consumer's credit and otherwise include the following features: (1) access to heavily discounted authorized user tradelines; (2) video and written materials describing how to fix one's credit; and (3) coaching or counseling on how to use the videos and written materials.

43.     Defendants continue making claims of "fast" credit repair, in as little as 45 days, by removing negative information.

44.     For example, during a phone call, Defendants' representatives told an undercover FTC investigator he will "start seeing [credit repair] results in as little as 90 days and that at least 70 percent of your negatives will be removed. However, right now, our clients are seeing anywhere between 80 to 95 percent removal rate." The representative continued, claiming a consumer would see results in "as little as 45 days" for a more expensive package because it is "more of an expedited process."

45.     Defendants routinely claim that they will remove at least 70% of negative items and all credit inquiries from a credit report.

46.     Defendants' YouTube video titles also make express credit repair claims, such as:

> a.     "How These 3 Hacks Put Me Over 800 Credit Score Fast!" – Sept. 25, 2021;
>
> b.     "This is the Fastest, Most Effective Way to Remove Negatives and Boost Your Credit Score" – Sept. 13, 2021;
>
> c.     "72 Hour 'Credit Repair' Blueprint" – Aug. 18, 2021;
>
> d.     "How Tradelines Are The Single Fastest Way to Raise Your Credit Score" – May 20, 2021;
>
> e.     "How to Get to a 781 Credit Score in 15 Seconds" – May 19, 2021; and

17

       f.     "How I went from 505 to 814 credit score SO FAST!" – June 19, 2020.

47.     The contents of the YouTube Videos reiterate these claims. For example, in an August 5, 2021 YouTube video titled "Clean Up Your Credit Score With This Simple Method," Mr. Rando states: "I can remove anything from your credit report."

48.     Defendants also claim to have "proprietary software" that can remove negative accounts from a consumer's credit report.

49.     For example, one of Defendants' representatives told an undercover FTC investigator "there's even people [in Defendants' program] that have gotten 12 collections removed and it's all their collections, it's just the proprietary software gets them the fastest results."

50.     Defendants, as The Credit Game, also continue to sell credit piggybacking services to add positive information to consumers' credit reports to quickly increase consumers' credit scores.

51.     For example, in a May 20, 2021 YouTube video titled "How Tradelines Are The Single Fastest Way to Raise Your Credit Score," Mr. Rando explains how authorized user tradelines work, claiming that credit piggybacking:

> is the absolute fastest way to raise your credit score. In fact, there's nothing even faster. I don't care if you pay down your utilization. I don't care if you remove negatives. I don't care if you remove inquiries. There is nothing, if you time this correctly, that can raise your score as fast as a tradeline. In fact, I've seen tradelines, 150 to 180 points in three days, I had a client that raised this credit score 174 points in under three days. There is nothing that can raise your score that fast. And I'm going to show you guys how to do it.

52.     In the video, Mr. Rando explains credit piggybacking is a way to add positive information to consumers' credit report that they did not obtain themselves so the consumer's credit report "shows lenders perfect payment history" when trying to "buy a house," "get a car," or "get credit cards."

53.     Defendants' YouTube videos, websites, and other promotional materials invite consumers to sign up for their services by purchasing through their webpages or by calling Defendants directly.

54.     For example, in an April 12, 2021 YouTube video titled "Do you know how to get $10,000 added on Your Credit Report," Mr. Rando entreats consumers to "click the link below" in the video description.   Upon clicking the link, consumers visit a website operated by Digital Scaling, where Defendants sell one of their cheaper packages that includes entry into a raffle for a $10,000 tradeline and credit coaching sessions with Mr. Rando.   When consumers enter their payment information, Defendants then upsell them with an offer for a more expensive package and invite consumers to one of Defendants' business or investment opportunity webinars.

55.     When consumers call the number provided by Defendants, they speak with Defendants' representatives who reiterate Defendants' credit repair and tradeline claims and offers.

19

56.    Defendants' products and services are often touted as "educational" in

nature, but many of Defendants' offered packages also come with credit repair

services and access to Defendants' database of authorized user tradelines.

57.    For example, in an April 6, 2021 YouTube video titled "How To Get A

Free Lambo Edition Credit Repair TODAY ONLY," Mr. Rando explains

Defendants:

> created a system called The Credit Game.  I designed a system that works.
> Most people, they're BS, okay?  First of all, the only, one and only [system] in
> the United States right now that encompasses three things in one program.
> And you know what that is?  It's called The Credit Game.  Not only do you
> get 75% off of aged tradelines through my vendor.  75% off.  Literally you
> could start a business right there just by that discount.  You get access to the
> fastest credit repair on planet Earth, through my vendor.  Not letters, not
> sending out letters, snail mail, old school 2014 style, okay, that most of these
> companies do.  99.9% of them do because they don't have the software.  My
> vendor has the software, does it electronically.  And number three, nobody
> teaches you what to do when you get that score.

58.    Defendants' routinely fail to deliver their promised credit repair services

either within the time promised, or at all.

59.    Defendants generally do not review consumers' credit scores during

their customer intake process.   Without detailed information about a consumer's

current score and accurate credit history, as well as access to the credit scoring model

itself, no credit repair organization can guarantee that the addition of a tradeline will

improve the consumer's score by a specific amount within a specific time period.

60.    Furthermore, Defendants' claim they have "software" or other

proprietary "electronic" methods to challenge and remove information from a

consumer's credit report are false.

20

**Defendants' Course of Business Attempts to Mislead Credit Reporting Agencies
and Creditors**

61.     Defendants claim to be able to remove negative information from

consumers' credit reports.   To achieve these results, Defendants represent to credit

reporting agencies and prospective credit lenders that any identifying information,

such as names, addresses, phone numbers, and employment history, associated with

a negative account, regardless of the information's accuracy, is incorrect.

Defendants advise consumers to do the same.

62.     In a further attempt to remove accurate negative information from

consumers' credit reports, Defendants provide false identifying information to credit

reporting agencies.   Defendants advise consumers to do the same.

63.     Before manipulating information on credit reports, Defendants instruct

consumers to "freeze" the "sub-bureaus," such as Lexis Nexis and Corelogic.

Defendants claim the "freeze" will stop credit reporting agencies from verifying the

accuracy of information on the account.

64.     Defendants then direct consumers to dispute the identifying information

associated with a negative account, regardless of its accuracy.

65.     For example, in a January 4, 2022 YouTube video titled "DO THIS

before you dispute any negatives or your [sic] COMPLETELY wasting your

TIME!," Mr. Rando, in discussing how to "stage" a credit report to remove negative

information, directs consumers to:

> remove every address and every phone number that is attached to any of the
> negative accounts.  So if you live at 123 Lala Street, and that's where your

21

living currently, and you have collections or charge offs or anything negative on your credit report that's attached to 675 Hard Road Drive then you need to remove 67[5] Hard Road Drive from your credit report. You no longer live there. You're going to contact the credit bureaus and you're going to tell them you want this address off your credit report now. I know with all the identity theft that's going on right now, I don't want my address on my credit report. I don't want this address, don't say "my", I don't want this address on my credit report anymore. It's not mine, I want it off. Get the address that's associated with the negative account off. And remove the phone numbers that you had during the time [of] that negative account.

66.    Another YouTube Video from January 12, 2022 titled "Collections and

Charge Offs Will Not Be Removed Until You Do This First!" makes similar

directives, telling consumers to:

remove any address and any name and any phone number that you have that was associated to a negative account. You've got a collection or charge off and you have 123 Lala Street, get that off your credit report. If you're living in the house where the negative is associated to and you don't have any other address, then use an address of a friend or a family member. Leave that in your credit report.

67.    Defendants also sell consumers "proprietary letters" with instructions

advising consumers to use the letters to dispute the consumer's identifying

information.

68.    For example, in a November 16, 2021 YouTube Video titled

"INCREASE Your Credit Score In 30 Days | How to Increase Your Credit,"

discussing the credit repair "help," "coaching," and "mentorship" Defendants sell to

consumers, Mr. Rando states:

I'm your Mike Tyson. I'm your, I'm your Tiger Woods. I'm your Michael Jordan, right. I'm your Arnold Schwarzenegger in the gym. I'm that guy that's going to be able to help you get to the next level fast because I know exactly where the shortcuts are and how to pivot around them.

22

69.    Additionally, in numerous instances, unbeknownst to the consumers,

Defendants have filed, or caused to be filed on the FTC's identitytheft.gov website,

identity theft reports asserting that negative information on consumers' credit reports

resulted from identity theft.

70.    In fact, in numerous instances, consumers on whose behalf Defendants

filed, or caused to be filed, identity theft reports were not victims of identity theft nor

was the negative information in question the result of identity theft. Defendants

then submit these false identity theft reports to credit reporting agencies and

prospective credit lenders to remove negative accounts from a consumers' credit

report.

71.    The filing of an identity theft report, however, does not automatically

result in the removal of negative information from a consumer's credit report. Upon

receiving an identity theft report, credit reporting agencies typically review the

reports to determine whether those reports were wrongfully filed, in which case the

credit reporting agency may decline to block the requested negative information.

72.    As set forth above, Defendants claim they will improve consumers'

credit score by adding them as "authorized users" to the credit accounts of other

unrelated individuals with positive payment histories.

73.    Consumers who purchase Defendants' services and are added as

"authorized users" are not, in fact, authorized to use the credit accounts to which

23

they have been added.   These consumers do not receive a card for the account and do not have access to the credit account.

74.     For example, in a May 20, 2021 YouTube video titled "How Tradelines Are The Single Fastest Way to Raise Your Credit Score," Mr. Rando explains how authorized user tradelines work, claiming the third party holder of a credit card will "share their good payment history with you" but "you never get access to the card."

75.     Despite informing consumers they do not receive access to the account, Defendants represent to credit reporting agencies and prospective credit lenders the consumers are, in fact, authorized users of those accounts.   Defendants advise consumers to do the same.

### Defendants Make Deceptive Refund Claims

76.     Defendants claim their credit repair services are "guaranteed" or otherwise claim consumers are entitled to a refund if they do not see the promised results.

77.     For example, in a December 9, 2020 YouTube video titled "The Top 10 Fastest Ways to Get an 800 Credit Score," Mr. Rando states:

> I'm tell[ing] you something, with the elite credit repair, which I'm covering for you guys today, the fastest credit repair in the nation, results in 60 days.   Okay, and a guarantee to help you guys out, guaranteed, money back, 100 percent money back guarantee if there's not results in 60 days.   I can't do much more than that.   This vendor is the absolute best on the planet.

78.     Another example appears in a December 29, 2020 YouTube video titled "How to Remove Charge Offs and Collections From Your Credit Report," where Mr. Rando states: "Believe me, if you get in my program, and

you don't see a difference in your credit score, and you don't see a difference in

your finances, I'll refund the whole thing back to you.   You have nothing to

lose."

79.    Another example appears in a June 8, 2021 YouTube video titled "3

credit hacks about to go away fast (CFPB)," where Mr. Rando states:

> I promise you one thing.  My vendor for the credit repair and the education
> you're gonna get on credit, will increase your credit score 100 percent.  I
> guarantee results, and my vendor guarantees results.   In guess what?   45 days.
> 45 days to guarantee results, there is nothing faster on the planet when it comes
> to credit repair.  So if you want to raise your credit score over 100 points, get
> in the game.   Have the vendor start working, you're busy, you have no time to
> worry about credit, let them do what they're good at.

80.    Additionally, one of The Credit Game's websites claims that The Credit

Game has a 365-day "refund policy" stating:

## REFUND POLICY

Refund Policy for Prosperity Training Technology LLC

Last Updated on March 19th, 2021

Refund Policy of www.creditgameuniversity.com

Welcome to the Prosperity Training Technology LLC website (the "Website").

Our policy lasts 365 days. If 365 days have gone by since your purchase, unfortunately, we can't

offer you a refund or exchange.

To complete your return, we require a receipt or proof of purchase and an email

to Support@CreditGameU.com with the subject line "Refund Request".

81.    In numerous instances, consumers have been unable to obtain a refund

from Defendants when consumers do not receive Defendants' promised results or

services, even when consumers request the refund within 3 business days of

purchase.

82.     Ms. Rando told the Better Business Bureau Defendants' rise in consumer complaints seeking refunds was due to Defendants' poor communication with consumers during Defendants' transition from Wholesale Tradelines to The Credit Game.

83.     Defendants also often respond to refund requests by telling consumers they only purchased digital educational materials, not credit repair services, and they have a no refund policy for those materials.

84.     Defendants also deny refunds because they claim the credit repair services are provided by a "vendor," usually Elite Deletions, and that the "vendor" is a separate company.

85.     However, a representative for Elite Deletions told an undercover FTC investigator they do not sell services to the public, instead solely servicing The Credit Game consumers.

86.     Ms. Rando is the account holder for Elite Deletions' phone number.

87.     Elite Deletions has no corporate form.

88.     Instead, Elite Deletions is wholly controlled by Defendants.   Indeed, Elite Deletions' employees report, ultimately, to the Randos or their subordinates.

### Defendants Deceive Consumers Regarding the Legality of Their Credit Repair Services

89.     Defendants represent to consumers that their credit repair services, including their credit piggybacking practices, are legal.

26

90.     For example, in a January 3, 2022 YouTube video titled "How to Hack
the Credit Bureaus Out Of An 800 Credit Score!," Mr. Rando, in discussing
Defendants' piggybacking practices, stated: "this should be illegal it's not though,
there's a thing called authorized user." Mr. Rando further explains: "that would be
like me adding you to my credit card as an authorized user. You're going to take
over the payment history, you're going to take over the age of that account."

91.     Additionally, throughout many of Defendants' YouTube videos, Mr.
Rando claims consumers have the "legal right" to challenge anything on their credit
report. Defendants' YouTube video titles and descriptions reiterate Defendants'
claims of legality, such as: "5 Credit Score Building Tricks That Should be Illegal
(But Are not)" – January 3, 2022; "4 Credit Hacks That Should Be Illegal But Are
Not" – July 6, 2021; and "Credit Repair Hack That Should Be 'ILLEGAL' Buts [sic]
It's NOT!" – June 15, 2021.

92.     For example, in an August 5, 2021 YouTube video titled "Clean Up
Your Credit Score With This Simple Method," Mr. Rando states:

> You have the legal right to challenge anything on your credit report that you
> feel is unfair, incorrect, outdated, unduly uh erroneous, negative. Right, the
> onus is put on the credit bureaus, not you. So, they can't say 'well you didn't
> believe that wasn't yours." . . . It's [the credit reporting agencies'] job to either
> verify or come back and say, 'guess what, it is being removed.' So, understand
> that first, you have the legal right to challenge anything on your credit report
> that you feel is not supposed to be there."

93.     In a November 16, 2021 YouTube Video titled "INCREASE Your
Credit Score In 30 Days | How to Increase Your Credit," Mr. Rando states:

27

[G]et rid of the whole account. I would challenge the whole validity of the account and say, 'you know what, I challenge the whole validity [of the] account because I believe it's inaccurate, obsolete, unfair, erroneous, or incorrect, and I want the whole account removed off my credit.' Remember, you have the legal right of 1974 to say guess what, 'I challenge everything that I want on my credit report, nobody can tell me that it's not mine, or it is mine.' That is your legal right, and the onus has [been] put on the credit bureaus to come back and verify it from the creditor to say it is yours or not. If you don't like it, or you don't want it on your credit report, challenge that bad boy.

94.    However, as detailed in Counts III-IX, Defendants' conduct violates CROA, including by making false or misleading statements to credit reporting agencies and potential creditors regarding consumers' credit history or credit worthiness or otherwise to prevent the display of adverse information that is accurate and not obsolete.

95.    Furthermore, when Defendants purchased the Cardholder Database from BMS, they acknowledged, in the Letter of Intent, that they "underst[ood] the risks of operating a tradeline business," and that a "regulator" could investigate such a business and "force it to cease operations, rendering [the Cardholder Database] unusable." Nonetheless, Defendants have continued to market access to authorized user tradelines, and other credit repair services, while claiming that these services are legal.

**Defendants' Unlawful Enrollment Process for Their Credit Repair Services**

96.    Defendants require consumers to make an upfront payment, often thousands of dollars, before any of their credit repair services have been performed.

97.    For example, Defendants' representatives told an undercover FTC investigator that payment was due "today."

28

98.    Defendants instruct consumers to complete and sign a contract or agreement, often through an online document signature platform, such as DocuSign.

99.    In numerous instances, these contracts fail to be accompanied by or include certain disclosures, as specified in 15 U.S.C. § 1679d.  For instance, although Defendants make performance claims to induce consumers to purchase their services, the contracts do not identify these performance claims or specify the services that will be performed or the amount of time it will take for completion.

100.    In numerous instances, these contracts also fail to contain, as specified in 15 U.S.C. § 1679d(b), the full terms and conditions of payment, a full and detailed description of the services to be performed, the name and principal address of each organization that will perform the services, and a disclosure stating:

You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right.

101.    In numerous instances, Defendants also fail to provide consumers with a written statement containing prescribed language concerning "Consumer Credit File Rights Under State and Federal Law," as specified in 15 U.S.C. § 1679c, before consumers execute the contract or agreement.

102.    In numerous instances, Defendants also fail to provide consumers with a "Notice of Cancellation" form, in duplicate, containing prescribed language concerning consumers' three-day right to cancel that consumers can use to cancel the contract or agreement, as specified in 15 U.S.C. § 1679e.

29

**Defendants Associated Their Deceptive Credit Repair Services with a
Government Benefit Related to COVID-19**

103. In an effort to defray the economic impact of COVID-19 on consumers,

Congress passed the COVID Related Tax Relief Act of 2020, Public Law 116-260,

134 Stat 1182, § 272, and the American Rescue Plan Act of 2021, Public Law 117-2,

135 Stat 138, § 9601.

104. The COVID Related Tax Relief Act of 2020 included a December 2020

tax rebate payment. 26 U.S.C. § 6428A.

105. The December 2020 tax rebate payment issued to consumers pursuant

to the COVID Related Tax Relief Act of 2020 is a government benefit related to

COVID-19.

106. The American Rescue Plan Act of 2021 included a March 2021 tax

rebate payment. 26 U.S.C. § 6428B.

107. The March 2021 tax rebate payment issued to consumers pursuant to

the American Rescue Plan Act of 2021 is a government benefit related to COVID-19.

108. The American Rescue Plan Act of 2021 also included child tax credit

payments, which began in July 2021. 24 U.S.C. § 24.

109. The child tax credit payments issued to consumers pursuant to the

American Rescue Plan Act of 2021 is a government benefit related to COVID-19.

110. Defendants requested consumers spend their December 2020 and

March 2021 tax rebate payments , often called "stimulus checks" by Defendants, on

their credit repair services.

30

111.    Additionally, in July 2021, Defendants urged consumers to spend the increased child tax credit on their credit repair services.

112.    For instance, on December 30, 2020, Defendants published a video titled "How to Use the Government to Boost Your Credit Score ASAP" with the following thumbnail image:



113.    In the video, Mr. Rando urges consumers to take the stimulus money from the then recent COVID Related Tax Relief Act of 2020 and "invest in yourself" by buying one of Defendants' credit repair packages.

114.    In a March 17, 2021 YouTube video titled "No Money Out Of Pocket For Life Changing Credit Results," in which Defendants urge consumers to spend stimulus payments from the then recent American Rescue Plan Act of 2021, Mr. Rando states:

> There is no, absolutely, no risk.  No risk.  You're investing free money into a program that has helped so many people change their life and absolutely no risk to you.  No risk, zero.  You didn't work for the money [the] government gave it to you.  $1.3 trillion across America.  Every family got $1,400 per person in their household.  It's free money.  Take the money and invest into something smart, not dumb, and watch the results and I guarantee you'll be one of these people that call me and go: "You know what Mike, you changed my life.  Thank you for pushing me to do something that I knew I needed to do but maybe at the time I didn't have the money, but the government gave me the

31

money and now I can change my life." Take advantage and change your life with free money. Not everybody gets this opportunity.

115. In the comments section for the video, Defendants told consumers to call them once the consumers received their stimulus check to enroll in Defendants' services:



116. Defendants repeated their call for consumers to use their stimulus checks for their credit repair services in another March 17, 2021 YouTube video titled "How to Use the Government to Boost Your Credit Score" using the following thumbnail image:



117.   Then, in July 2021, when consumers began receiving their COVID-19-related child tax credits, Defendants once again urged consumers to spend this money on their products and services, this time through a video titled:   "The Government Just Boosted Your Credit Score."

118.   In the summary for that video, Defendants wrote, "The Government Just Boosted Your Credit Score by giving you the 2021 child tax credit check.   The best way to invest it is in yourself.   Find out how in today's video."

119.   In that video, Defendants make claims about their ability to fix consumers' credit and urge consumers to use the child tax credit money to buy a credit repair package.

120.   Email marketing sent in July 2021 made similar claims, with one email offering "Elite Credit Repair paid for by the government."

121.   As set forth above, Defendants' credit repair services are misleading, false, or unsubstantiated.

## Defendants Deceive Consumers Regarding Their Business or Investment Opportunities

122.   Defendants claim consumers can earn income by starting their own credit repair companies, typically by reselling The Credit Game's credit repair services and education materials and leveraging access to the purportedly discounted tradelines available through The Credit Game.

123.   In the February 14, 2020 YouTube video titled "ANNOUNCEMENT: Moving Forward With The Credit Game," Mr. Rando announced Defendants' "brokers," who had purchased authorized user tradelines from Wholesale Tradelines, would receive a "copy" of The Credit Game's "elite business program" for no charge, teaching them "every single thing you need to know about how to run a tradeline company.   How to do a credit repair.   The techniques, the tricks, the ins and outs. . . . [that] literally will lay out exactly what I did."

124.   Defendants claim consumers can earn substantial profits by reselling The Credit Game's products and services.

125.   For example, in a February 23, 2021 YouTube video titled "Turn Credit To Millions Of Cash! The Untold Secret Revealed Finally," Mr. Rando said a Credit Game member could purchase a tradeline from Defendants' vendor for a 10-year old credit card with a $20,000 credit limit for $300, but turn around and resell the same tradeline to another consumer for $1,200, profiting from the difference.   He continued, saying:

> [T]his is a not a five-figure job.   Not a six-figure job.   This is a seven-figure income job.   In my case, it was an eight-figure.   Okay, nobody knows more

34

about the how to turn credit to cash game, than me. . . . I will help you make a lot of money and I'll show you how easy it is, if you want to make money.

126. Mr. Rando then makes a sales pitch, discussing the different credit repair and tradeline packages offered by The Credit Game, reiterating the income potential for consumers by saying "this is a very, very, very lucrative opportunity for you, if you want it. And I am the person to help you, I am the key to your financial success if you want it. . . . If anyone can mentor you in that space, I'm your guy." The video ends with Mr. Rando asking consumers to call Defendants.

127. In another example, in a July 16, 2021 YouTube video titled "How To Make Cash From Your Credit," when encouraging consumers to create their own credit piggybacking companies using consumers' own credit cards, Mr. Rando stated:

> You're going to add that person as an authorized user on your card. The client never gets access to the card, ever, because the card is mailed to you. Even if I added John Smith [to] my credit card, they can never have access to the credit card, they can never have access to my personal information, they can never have access to anything about me. Okay, so if I'm adding somebody it is completely safe for me to add somebody else. Okay, they make it safe, it's called adding an authorized user.

128. Defendants reiterated these income claims on a phone call with an undercover FTC investigator, stating: "[Mr. Rando] wants everybody making millions. So tens of thousands monthly . . . is the idea of what we're trying to get you set up with."

35

129.    During the same call, Defendants claimed they would provide marketing advice and refer consumers to companies that can make personalized websites for consumers' businesses.

130.    When the FTC's undercover investigator asked for additional materials to substantiate the earnings claims and explain the offering, he was referred to The Credit Game's website, which fails to provide any earnings claim substantiation or disclosures.

131.    Defendants also ran an 8-hour in-person and online event called "Digital Millionaire" hosted by the Randos, Credit Game employees, and others. Defendants claimed the live event would show consumers how to make "8 figures" in a down economy.

132.    At the live event, Defendants stated everyone attending was getting a course "in a box" and that "it's true, tried, and it works" because it "is the same one that [Mr. Rando] built a $15 million business in 15 months with."   Defendants also offered a new $15,000 business coaching program, which included 2-3 coaching sessions per week with Mr. Rando.

133.    Defendants also urge consumers to spend COVID-19-related benefits on these business or investment opportunities.

134.    For instance, in a March 18, 2021 video titled, "How To Get Free Credit Repair Using Other People's Money," Mr. Rando urges consumers to spend their stimulus money on a package including credit repair as well as Defendants'

business opportunity, Mr. Rando claims he will teach consumers "how you set up a
five-figure company in less than 21 days. This is a, like, this program is lights out
for businesses who want to make money when they sleep."

135. Contrary to Defendants' representations, consumers who enroll in
Defendants' programs and attempt to deploy its strategies are unlikely to earn the
income Defendants advertise and cannot do so legally.

136. Specifically, Defendants fail to tell consumers that it is impossible to
make the promised earnings because operating a credit piggybacking company or
reselling Defendants' credit repair services and their other credit repair practices are
unlawful.

## Defendants' Unlawful Enrollment Process for Their Business or Investment Opportunities

137. Defendants fail to provide any written disclosures prior to consumers'
purchase of Defendants' business opportunity.

138. Although Defendants make claims to consumers about their likely
earnings or income, they fail to provide consumers with any earnings claim
statements or disclosures.

## Defendants' Practices Are Ongoing

139. Based on the facts and violations of law alleged in this Complaint, the
FTC has reason to believe that Defendants are violating or are about to violate laws
enforced by the FTC, including the FTC Act, CROA, the TSR, and the BOR.

37

## VIOLATIONS OF THE FTC ACT

140.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

141.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

142.     On January 31, 2020 the Secretary of Health and Human Services, pursuant to his authority under Section 319 of the Public Health Service Act, declared that COVID-19 had caused a public health emergency.   As of the date of this filing, this public health emergency declaration remains in effect.

143.     For the duration of the ongoing COVID-19 public health emergency, the COVID-19 Consumer Protection Act makes it unlawful for any person, partnership, or corporation to engage in a deceptive act or practice in or affecting commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. 45(a), that is associated with a government benefit related to COVID-19.   15 U.S.C. § 45 note (CCPA § 1401(b)(2)).

144.     Pursuant to Section 1401(c)(1) of the CCPA, 15 U.S.C. § 45 note (CCPA § 1401(c)(1)), a deceptive act or practice in violation of Section 5(a) of the FTC Act, as described in Section 1401(b) of the CCPA is treated as a violation of a rule defining an unfair or deceptive act or practice prescribed under Section 18(a)(1)(B) of the FTC Act, 15 U.S.C. § 57a(a)(1)(B).   Section 1401(c)(2) of the CCPA, 15 U.S.C. § 45 note (CCPA § 1401(c)(2)), provides that the FTC "shall

enforce" the CCPA in "the same manner, by the same means, and with the same jurisdiction, powers, and duties as though all applicable terms and provisions of the Federal Trade Commission Act (15 U.S.C. 41 et seq.) were incorporated into and made a part of this Act." Section 19(a)(1) of the FTC Act, 15 U.S.C. § 57b(a)(1), provides that the FTC may commence a civil action against "any person, partnership, or corporation" who "violates any rule . . . respecting unfair or deceptive acts or practices."

145. On December 27, 2020 the President signed the Consolidated Appropriations Act, 2021, which, among other things, provides benefits directly to consumers to address the impact of COVID-19. Public Law 116-260, 134 Stat 1182. Included in this larger act is the COVID Related Tax Relief Act of 2020, which provides benefits to consumers to address the impact of COVID-19. *Id.* § 272.

146. On March 11, 2021 the President signed the American Rescue Plan Act of 2021 into law, which, among other things, provides benefits directly to consumers to address the impact of COVID-19. American Rescue Plan Act of 2021, Public Law 117-2, 135 Stat 138, §§ 9601 & 9611. One such benefit is a tax rebate, issued directly to consumers, often amounting to $1,400 per consumer. 26 U.S.C. § 6428B. An additional benefit is the increased child tax credit, which resulted in monthly distributions to consumers beginning in July 2021. 26 U.S.C. § 24.

## Count I – Misrepresentations Regarding Credit Repair Services

147. In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of credit repair products and services, Defendants represent, directly or indirectly, expressly or by implication, that:

>    a.    Defendants can, or by following Defendants' advice consumers can: (1) significantly increase a credit score, including from as low as the 500s to the 700s or higher; (2) increase the credit score "fast," including in as little at 45 days; (3) remove any negative item from a credit report; (4) remove at least 70% of negative items on a consumer's credit report; (5) remove all credit inquiries from a credit report; or (6) increase a consumer's credit score by causing a third party's credit history to appear on the consumer's credit report;

>    b.    Defendants' credit repair products and services come with a money-back guarantee or that consumers are entitled to a refund if they do not see the promised results; and

>    c.    Defendants' methods of modifying credit reports, including manipulating the appearance of true information on credit reports and causing the inclusion of false information on credit reports, are legal practices.

40

148.    On or after December 27, 2020 Defendants made the representations set forth in Paragraph 147, which are associated with a government benefit related to COVID-19.

149.    In truth and in fact, in numerous instances in which Defendants have made the representations set forth in Paragraph 147 of this Complaint, such representations were false or misleading or were not substantiated at the time Defendants made them.

150.    Therefore, Defendants' representations as set forth in Paragraph 147 constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15. U.S.C. § 45(a).

### Count II – Misrepresentations Regarding Money-Making Opportunity

151.    In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of a money-making opportunity, Defendants have represented, directly or indirectly, expressly or by implication, that consumers can, using Defendants' products and services, profitably and legally operate a business selling credit repair services and education, including advising consumers that they can or should manipulate the appearance of true information on credit reports and cause the inclusion of false information on credit reports.

152.    On or after December 27, 2020 Defendants made the representations set forth in Paragraph 151, which are associated with a government benefit related to COVID-19.

153.   In truth and in fact, in numerous instances in which Defendants have made the representations set forth in Paragraph 151 of this Complaint, such representations were false or misleading or were not substantiated at the time Defendants made them.

154.   Therefore, Defendants' representations as set forth in Paragraph 151 constitute a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

155.   The Credit Repair Organizations Act took effect on April 1, 1997 and has since that date remained in full force and effect.

156.   The purposes of CROA, according to Congress, are: (1) to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services; and (2) to protect the public from unfair or deceptive advertising and business practices by credit repair organizations.   15 U.S.C. § 1679(b).

157.   CROA defines a "credit repair organization" as "any person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that they can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of (i) improving any consumers' credit record, credit history, or credit rating;

42

or (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i)."   15 U.S.C. § 1679a(3)(A).

158.   Defendants are a "credit repair organization."

159.   CROA prohibits all persons from making or using any untrue or misleading representation of the services of the credit repair organization.   15 U.S.C. § 1679b(a)(3).

160.   CROA prohibits credit repair organizations from charging or receiving any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform before such service is fully performed.   15 U.S.C. § 1679b(b).

161.   CROA prohibits all persons from making any statement, or counseling or advising any consumer to make any statement, which is untrue or misleading with respect to any consumer's credit worthiness, credit standing, or credit capacity to: (1) any consumer reporting agency; or (2) any person who has extended credit to the consumer or to whom the consumer has applied or is applying for an extension of credit.   15 U.S.C. § 1679b(a)(1).

162.   CROA prohibits all persons from engaging, directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization.   15 U.S.C. § 1679b(a)(4).

43

163.   CROA prohibits all persons from making any statement, or counseling or advising any consumer to make any statement, the intended effect of which is to alter the consumer's identification to prevent the display of the consumer's credit record, history, or rating for the purpose of concealing adverse information that is accurate and not obsolete to: (1) any consumer reporting agency; or (2) any person who has extended credit to the consumer or to whom the consumer has applied or is applying for an extension of credit.   15 U.S.C. § 1679b(a)(2).

164.   CROA requires credit repair organizations to provide consumers with a written statement containing prescribed language concerning "Consumer Credit File Rights Under State and Federal Law" before any contract or agreement is executed. 15 U.S.C. § 1679c(a).

165.   CROA provides that consumers may cancel any contract with a credit repair organization without penalty or obligation by notifying the credit repair organization within three business days after the date of the contract or agreement. 15 U.S.C § 1679e(a).

166.   CROA requires credit repair organizations to include certain terms and conditions in any contract or agreement for services, including a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: "You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract.   See the attached

44

notice of cancellation form for an explanation of this right."   15 U.S.C. §
1679d(b)(4).

167.   CROA requires credit repair organizations to provide consumers with a
"Notice of Cancellation" form, in duplicate, containing prescribed language
concerning consumers' three-day right to cancel that consumers can use to cancel the
contract.   15 U.S.C. § 1679e(b).

168.   Pursuant to Section 410(b)(1) of CROA, 15 U.S.C. § 1679h(b)(1), any
violation of any requirement or prohibition of CROA constitutes an unfair or
deceptive act or practice in commerce in violation of Section 5(a) of the FTC Act, 15
U.S.C. § 45(a).   Pursuant to Section 410(b)(2) of CROA, 15 U.S.C. § 1679h(b)(2),
all functions and powers of the FTC under the FTC Act are available to the FTC to
enforce compliance with CROA in the same manner as if the violation had been a
violation of any FTC trade regulation rule.   Section 19(a)(1) of the FTC Act, 15
U.S.C. § 57b(a)(1), provides that the FTC may commence a civil action against "any
person, partnership, or corporation" who "violates any rule . . . respecting unfair or
deceptive acts or practices."

### Count III – Misrepresentations Regarding Credit Repair Services

169.   In numerous instances, in connection with the advertising, marketing,
promotion, offering for sale, or sale of services to consumers by a credit repair
organization, as that term is defined in Section 403(3) of CROA, 15 U.S.C. §

1679a(3), Defendants have made untrue or misleading representations to consumers, including that:

> a.   Defendants can, or by following Defendants' counsel or advice consumers can: (1) significantly increase a credit score, including from as low as the 500s to the 700s or higher; (2) increase the credit score "fast," including as little at 45 days; (3) remove any negative item from a credit report; (4) remove at least 70% of negative items on a consumer's credit report; (5) remove all credit inquiries from a credit report; or (6) increase a consumer's credit score by causing a third party's credit history to appear on the consumer's credit report;

> b.   Defendants' credit repair services come with a money-back guarantee or that consumers are entitled to a refund if they do not see the promised results; and

> c.   Defendants' methods of modifying credit reports, including manipulating the appearance of true information on credit reports and causing the inclusion of false information on credit reports, are legal practices.

170.   Defendants' acts or practices, as described in Paragraph 169 of this Complaint, violate CROA, 15 U.S.C. § 1679b(a)(3), and therefore are deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

46

## Count IV – Violation of Prohibition against Charging Advanced Fees for Credit Repair Services

171.    In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of services to consumers by a credit repair organization, as that term is defined in Section 403(3) of CROA, 15 U.S.C. § 1679a(3), Defendants have charged or received money or other valuable consideration for the performance of credit repair services that Defendants have agreed to perform before such services were fully performed.

172.    Defendants' acts or practices, as described in Paragraph 171 of this Complaint, violate CROA, 15 U.S.C. § 1679b(b), and therefore are deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## Count V – Violation of Prohibition against Untrue or Misleading Statements

173.    In numerous instances, Defendants have made statements, or counseled or advised consumers to make statements, which are untrue or misleading, or which upon the exercise or reasonable care Defendants should know to be untrue or misleading, with respect to their credit worthiness, credit standing, or credit capacity to consumer reporting agencies, creditors, and potential creditors by:

> a.    Causing a third party's credit history to appear on the consumer's credit report through the sale or advice to purchase so-called "authorized user tradelines" when the consumer does not, in fact, gain access to the third party's credit account; and

47

b. Removing or advising consumers on how to remove true negative items from credit reports, including through: (1) the filing of false identity theft reports; (2) dishonest manipulation of identifying information associated with credit reports followed by false claims to credit reporting agencies that accounts with negative histories are not associated with the consumer; or (3) otherwise advising consumers to challenge accurate non-obsolete information on their credit reports.

174. Defendants' acts or practices, as described in Paragraph 173 of this Complaint, violate CROA, 15 U.S.C. § 1679b(a)(1), and therefore are deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**Count VI – Engaging in Fraudulent or Deceptive Credit Repair Practices**

175. In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of services to consumers by a credit repair organization, as that term is defined in Section 403(3) of CROA, 15 U.S.C. § 1679a(3), Defendants have engaged, directly or indirectly, in acts, practices, or course of business that constitute or result in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization, by:

a. Causing a third party's credit history to appear on the consumer's credit report through the sale or advice to purchase so-called

48

"authorized user tradelines" when the consumer does not, in fact, gain

access to the third party's credit account; and

b.       Removing or advising consumers on how to remove true

negative items from credit reports, including through: (1) the filing of

false identity theft reports; (2) dishonest manipulation of identifying

information associated with credit reports followed by false claims to

credit reporting agencies that accounts with negative histories are not

associated with the consumer; or (3) otherwise advising consumers to

challenge accurate non-obsolete information on their credit reports.

176.    Defendants' acts or practices, as described in Paragraph 175 of this

Complaint, violate CROA, 15 U.S.C. § 1679b(a)(4), and therefore are deceptive acts

or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**Count VII – Violation of Prohibition Against Altering Consumer's Identification**

177.    Defendants have made statements, or counseled or advised consumers

to make statements, intending to alter the consumer's identification to prevent the

display of the consumer's credit record, history, or rating for the purpose of

concealing adverse information that is accurate and not obsolete to consumer

reporting agencies, creditors, and potential creditors by manipulating the identifying

information on file with credit reporting agencies, including but not limited to past

addresses and phone numbers, to suppress associated negative credit information.

49

178.    Defendants' acts or practices, as described in Paragraph 177 of this
Complaint, violate CROA, 15 U.S.C. § 1679b(a)(2), and therefore are deceptive acts
or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## Count VIII – Failure to Provide Required Disclosures and Documents

179.    In numerous instances, in connection with the sale of services to
consumers by a credit repair organization, as that term is defined in Section 403(3) of
CROA, 15 U.S.C. § 1679a(3), Defendants have failed to provide consumers:

> a.    A written statement of "Consumer Credit File Rights Under
> State and Federal Law," in the prescribed manner required by CROA
> before any contract or agreement is executed;

> b.    Contracts containing required terms and conditions, including:

> > i)    The terms and conditions of payment;

> > ii)    A full and detailed description of the services to be
> > performed;

> > iii)    The name and principal business address of each of the
> > Defendants;

> > iv)    A conspicuous statement in bold face type, in immediate
> > proximity to the space reserved for the consumer's signature on
> > the contract, regarding the consumers' right to cancel the
> > contracts without penalty or obligation at any time before the

50

third business day after the date on which consumers signed the

contracts; or

c.     A cancellation form in the prescribed manner required by

CROA.

180.    Defendants' acts or practices, as described in Paragraph 179 of this

Complaint, violate CROA, 15 U.S.C. §§ 1679c(a), 1679c(b), 1679d(b), 1679e(b), and

therefore are deceptive acts or practices in violation of Section 5(a) of the FTC Act,

15 U.S.C. § 45(a).

### Count IX – Failure to Honor Cancellation Requests

181.    In numerous instances, in connection with the sale of services to

consumers by a credit repair organization, as that term is defined in Section 403(3) of

CROA, 15 U.S.C. § 1679a(3), Defendants have failed to honor consumers' timely

cancellation requests.

182.    Defendants' acts or practices, as described in Paragraph 181 of this

Complaint, violate CROA, 15 U.S.C. § 1679e(a), and therefore are deceptive acts or

practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### VIOLATIONS OF THE TELEMARKETING SALES RULE

183.    In 1994, Congress directed the FTC to prescribe rules prohibiting

abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing

Act, 15 U.S.C. §§ 6101-6108.    The FTC adopted the original Telemarketing Sales

Rule in 1995, extensively amended it in 2003, and amended certain sections

thereafter.    16 C.F.R. Part 310.

184.   Under the TSR, a "telemarketer" means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a consumer or donor.   16 C.F.R. § 310.2(ff).   A "seller" means any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration.   16 C.F.R. § 310.2(dd).

185.   Defendants are "seller[s]" or "telemarketer[s]" engaged in "telemarketing," as those terms are defined in the TSR, 16 C.F.R. § 310.2(dd), (ff), and (gg).

186.   Under the TSR, an "investment opportunity" means anything, tangible or intangible, that is offered, offered for sale, sold, or traded based wholly or in part on representations, either express or implied, about past, present, or future income, profit, or appreciation.   16 C.F.R. § 310.2(s).

187.   Defendants have sold investment opportunities, as that term is defined in the TSR, 16 C.F.R. § 310.2(s).

188.   The TSR prohibits sellers and telemarketers from misrepresenting, directly or by implication, any material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer.   16 C.F.R. § 310.3(a)(2)(iii).

52

189.    The TSR also prohibits sellers and telemarketers from misrepresenting,

directly or by implication, any material aspect of the nature or terms of the seller's

refund, cancellation, exchange, or repurchase policies.    16 C.F.R. § 310.3(a)(2)(iv).

190.    The TSR also prohibits sellers and telemarketers from failing to disclose

truthfully, in a clear and conspicuous manner, a statement informing the customer

that its policy is to not make refunds, cancellations, exchanges, or repurchases; or, if

the seller or telemarketer makes a representation about a refund, cancellation,

exchange, or repurchase policy, failing to disclose truthfully, in a clear and

conspicuous manner, a statement of all material terms and conditions of such policy.

16 C.F.R. § 310.3(a)(1)(iii).

191.    The TSR also prohibits sellers and telemarketers from misrepresenting,

directly or by implication, any material aspect of an investment opportunity.    16

C.F.R. § 310.3(a)(2)(vi).

192.    The TSR also prohibits sellers or telemarketers from requesting or

receiving payment of any fee or consideration for goods or services represented to

remove derogatory information from, or improve, a person's credit history, credit

record, or credit rating until: (1) the time frame in which the seller has represented all

of the goods or services will be provided to that person has expired; and (2) the seller

has provided the person with documentation in the form of a consumer report from a

consumer reporting agency demonstrating that the promised results have been

achieved, such report having been issued more than six months after the results were achieved.   16 C.F.R. § 310.4(a)(2).

193.   Defendants have sold goods or services represented to remove derogatory information from, or improve, a person's credit history, credit record, or credit rating.

194.   Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).   Section 19(a)(1) of the FTC Act, 15 U.S.C. § 57b(a)(1), provides that the FTC may commence a civil action against "any person, partnership, or corporation" who "violates any rule . . . respecting unfair or deceptive acts or practices."

**Count X – Misrepresentations Regarding Credit Repair Services**

195.   In numerous instances, in connection with the telemarketing of credit repair services, Defendants have misrepresented, directly or by implication, material aspects of the performance, efficacy, nature, or central characteristics of their credit repair services, including that:

> a.   Defendants can, or by following Defendants' counsel or advice consumers can: (1) significantly increase a credit score, including from as low as the 500s to the 700s or higher; (2) increase the credit score "fast," including as little at 45 days; (3) remove any negative item from

a credit report; (4) remove at least 70% of negative items on a

consumer's credit report; (5) remove all credit inquiries from a credit

report; or (6) increase a consumer's credit score by causing a third

party's credit history to appear on the consumer's credit report; and

b.     Defendants' credit repair products or services come with a

money-back guarantee or that consumers are entitled to a refund if they

do not see the promised results.

196.    Defendants' acts or practices, as described in Paragraph 195 of this

Complaint, violate the TSR, 16 C.F.R. § 310.3(a)(2)(iii), (iv), and therefore are

deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. §

45(a).

## Count XI – Failure to Disclose Refund Policy

197.    In numerous instances, in connection with the telemarketing of credit

repair services, Defendants have failed to disclose truthfully, in a clear and

conspicuous manner, a statement informing customers that Defendants do not

provide refunds for their products or services.

198.    Defendants' acts or practices, as described in Paragraph 197 of this

Complaint, violate the TSR, 16 C.F.R. § 310.3(a)(1)(iii), and therefore are deceptive

acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## Count XII – Misrepresentations Regarding Investment Opportunities

199.    In numerous instances, in connection with the telemarketing of an

investment opportunity, Defendants have misrepresented, directly or by implication,

55

that consumers can, using Defendants' products and services, profitably and legally sell credit repair services and education, including advising consumers they can or should manipulate the appearance of true information on credit reports and cause the inclusion of false information on credit reports.

200.    Defendants' acts or practices, as described in Paragraph 199 of this Complaint, violate the TSR, 16 C.F.R. § 310.3(a)(2)(vi), and therefore are deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## Count XIII – Violation of Prohibition Against Charging Advance Fees for Credit Repair Services

201.    In numerous instances, in connection with the telemarketing of credit repair products or services, Defendants have requested or received payment of a fee or consideration for credit repair services before: (1) the time frame in which Defendants have represented all of the credit repair products or services will be provided to consumers has expired; and (2) Defendants have provided consumers with documentation in the form of a consumer report from a consumer reporting agency demonstrating the promised results have been achieved, with such report having been issued more than six months after the results were achieved.

202.    Defendants' acts or practices, as described in Paragraph 201 of this Complaint, violate the TSR, 16 C.F.R. § 310.4(a)(2), and therefore are deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## **VIOLATIONS OF THE BUSINESS OPPORTUNITY RULE**

203.    The FTC brings this action under the amended Business Opportunity
Rule, 16 C.F.R. Part 437, which was extended in scope to cover certain work-at-
home-opportunities, became effective on March 1, 2012, and has since that date
remained in full force and effect.

204.    Defendants are "sellers" who have sold or offered to sell "business
opportunities" as defined by the BOR, 16 C.F.R. §§ 437.1(c) and (q).

205.    Under the BOR, a "seller" is a person who offers for sale or sells a
business opportunity.   16 C.F.R. § 437.1(q).   Under the BOR, a "business
opportunity" means a "commercial arrangement" in which a "seller solicits a
prospective purchaser to enter into a new business;" the "prospective purchaser
makes a required payment;" and the "seller, expressly or by implication, orally or in
writing, represents that the seller or one or more designated persons will . . .
[p]rovide outlets, accounts, or customers, including, but not limited to, Internet
outlets, accounts, or customers, for the purchaser's goods or services."   16 C.F.R. §
437.1(c).   Under the BOR, a "designated person" means "any person, other than the
seller, whose goods or services the seller suggests, recommends, or requires that the
purchaser use in establishing a new business."

206.    Among other things, the BOR requires sellers to provide prospective
purchasers with a disclosure document in the form and using the language set forth
in the BOR and its Appendix A, and any required attachments, at least seven (7)

57

days before the prospective purchaser signs a contract or makes a payment. 16 C.F.R. § 437.2. In the disclosure document, the seller must disclose to prospective purchasers five categories of information, including basic identifying information about the seller, any earnings claims the seller makes, the seller's litigation history, any cancellation and refund policy the seller offers, and contact information of prior purchasers. 16 C.F.R. §§ 437.3(a)(1)-(5). The pre-sale disclosure of this information enables a prospective purchaser to contact prior purchasers and take other steps to assess the potential risks involved in the purchase of the business opportunity.

207. Defendants have made earnings claims in connection with the sale of their business opportunities, as defined by the BOR, 16 C.F.R. § 437.1(f). Under the BOR, an "earnings claim" means "any oral, written, or visual representation to a prospective purchaser that conveys, expressly or by implication, a specific level or range of actual or potential sales, or gross or net income or profits." 16 C.F.R. § 437.1(f).

208. The BOR prohibits sellers from making earnings claims unless the seller: (1) has a reasonable basis for the claim at the time it is made; (2) has in its possession written materials to substantiate the claim at the time it is made; (3) furnishes an earnings claim statement to prospective purchasers, in writing, containing, among other things, information regarding the time frame captured by the earnings claim, the characteristics of the purchasers, and the number and

58

percentage of all persons who purchased the business opportunity within the time frame who achieved at least the stated level of earnings; and (4) makes written substantiation of the earnings claim available to any prospective purchaser who requests it.   16 C.F.R. § 437.4(a).

209.   Defendants have also made earnings claims in connection with the sale of their business opportunities in the general media, as defined by the BOR, 16 C.F.R. § 437.1(h).   Under the BOR, "general media" means "any instrumentality through which a person may communicate with the public, including, but not limited to, television, radio, print, Internet, billboard, Web site, commercial bulk email, and mobile communications."   16 C.F.R. § 437.1(h).

210.   The Business Opportunity Rule also prohibits sellers from making earnings claims in the general media unless the seller: (1) has a reasonable basis for the claim at the time the claim is made; (2) has in its possession written materials that substantiates its claim at the time the claim is made; (3) states in immediate conjunction with the claim the time period in which the earnings were achieved and the number and percentage of purchasers who achieved at least the stated level of earnings in the claim.   16 C.F.R. § 437.4(b).

211.   The Business Opportunity Rule also prohibits sellers, directly or indirectly through a third party, from, among other things: (1) misrepresenting the amount of sales, or gross or net income or profits a prospective purchaser may earn or that prior purchasers have earned; (2) misrepresenting the cost, or the

performance, efficacy, nature, or central characteristics of the business opportunity or the goods or services offered to a prospective purchaser; and (3) misrepresenting any material aspect of any assistance offered to a prospective purchaser. 16 C.F.R. §§ 437.6(d), (h), (i).

212. The BOR requires the retention of certain records "[t]o prevent the unfair and deceptive acts or practices specified in this Rule." 16 C.F.R. § 437.7. Under the BOR, "business opportunity sellers and their principals must prepare, retain, and make available for inspection by [FTC] officials copies of the following documents for a period of three years: (a) each materially different version of all documents required by this Rule; (b) each purchaser's disclosure receipt; (c) each executed written contract with a purchaser; and (d) all substantiation upon which the seller relies for each earnings claim from the time each such claim is made." 16 C.F.R. § 437.7.

213. Pursuant to Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the BOR constitutes an unfair or deceptive act or practice in or affecting commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). Section 19(a)(1) of the FTC Act, 15 U.S.C. § 57b(a)(1), provides that the FTC may commence a civil action against "any person, partnership, or corporation" who "violates any rule . . . respecting unfair or deceptive acts or practices."

## Count XIV – Misrepresentations Regarding Business Opportunities

214.   In numerous instances, in connection with the offer for sale, sale, or promotion of a business opportunity, Defendants have, directly or indirectly through a third party, misrepresented that consumers can, using Defendants' products and services, profitably and legally operate a business selling credit repair services and education, including by advising consumers that they can or should manipulate the appearance of true information on credit reports and cause the inclusion of false information on credit reports.

215.   Defendants' acts or practices, as described in Paragraph 214 of this Complaint, violate the BOR, 16 C.F.R. §§ 437.6(d), (h), (i), and therefore are deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## Count XV – Failure to Provide Required Written Disclosures

216.   In numerous instances, in connection with the offer for sale, sale, or promotion of business opportunities, Defendants have failed to furnish prospective purchasers with complete, accurate, and current disclosures required by the BOR.

217.   Defendants' acts or practices, as described in Paragraph 216 of this Complaint, violate the BOR, 16 C.F.R. §§ 437.2 and 437.3, and therefore are deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## Count XVI – Failure to Provide Required Earning Claim Disclosures

218.    In numerous instances, in connection with the offer for sale, sale, or promotion of business opportunities in which Defendants have made earnings claims, including in the general media, Defendants have failed to furnish prospective purchasers with the earnings claim disclosures required by the BOR.

219.    Defendants' acts or practices, as described in Paragraph 218 of this Complaint, violate the BOR, 16 C.F.R. §§ 437.4(a), (b), and therefore are deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## CONSUMER INJURY

220.    Consumers are suffering, have suffered, and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act, CROA, the TSR, the CCPA, and the BOR.   Absent injunctive and other relief by this Court, Defendants are likely to continue to injure consumers and harm the public interest.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, Section 410(b) of CROA, 15 U.S.C. § 1679h(b), Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), Section 1401(c)(1) of the CCPA, 15 U.S.C. § 45 note (CCPA § 1401(c)(1)), the BOR, and the Court's own equitable powers, requests that the Court:

A.      Enter a permanent injunction to prevent future violations of the FTC Act, CROA, the TSR, the CCPA, and the BOR by Defendants in accordance with Section 13(b) of the FTC Act, 15 U.S.C. § 53(b);

B.     Grant preliminary injunctive and ancillary relief as may be necessary to
avert the likelihood of consumer injury during the pendency of this action and to
preserve the possibility of effective final relief, including, but not limited to:
temporary and preliminary injunctions, an order freezing Defendants' assets, the
appointment of a receiver, immediate access to Defendants' business premises and
documents, and an accounting of assets;

C.     Award monetary and other relief, including rescission or reformation of
contracts, the refund of money, the return of property, public notification, or other
relief necessary to redress injury to consumers resulting from Defendants' violations
of the FTC Act, CROA, the TSR, the CCPA, and the BOR in accordance with
Section 19 of the FTC Act, 15 U.S.C. § 57b; and

D.     Award any additional relief as the Court determines to be just and
proper.

                                    Respectfully submitted,


        5/2/2022                    */s/ Hong Park*
Dated: _____         _____

                                    Hong Park
                                    Brian M. Welke
                                    Sana Chaudhry
                                    FEDERAL TRADE COMMISSION
                                    600 Pennsylvania Avenue NW, CC 9528
                                    Washington, DC 20580
                                    Tel:  202-326-2158 (Park), -2897 (Welke),
                                    -2679 (Chaudhry)
                                    Facsimile: 202-326-3768
                                    Email:  hpark@ftc.gov; bwelke@ftc.gov;

schaudhry@ftc.gov
Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL RANDO, a/k/a Mike Singles, individually and as a principal of Prosperity Training Technology LLC, Elite Customer Services, LLC, Digital Business Scaling LLC, First Coast Matchmakers Inc., First Coast Matchmakers LLC, and Financial Consulting Management Group LLC,<br><br>VALERIE RANDO, a/k/a Valerie Payton, Val Rando, and Val Singles, individually and as a principal of Prosperity Training Technology LLC, Elite Customer Services, LLC, Digital Business Scaling LLC, First Coast Matchmakers Inc., First Coast Matchmakers LLC, and Financial Consulting Management Group LLC,<br><br>PROSPERITY TRAINING TECHNOLOGY LLC, a Florida limited liability company, also d/b/a The Credit Game, The Credit Game University, and Elite Deletions,<br><br>ELITE CUSTOMER SERVICES, LLC, a Florida limited liability company,<br><br>DIGITAL BUSINESS SCALING LLC, a Florida limited liability company,<br><br>FIRST COAST MATCHMAKERS INC., a Florida corporation, also d/b/a Wholesale Tradelines, | **Case No. 3:22-cv-00487-TJC-MCR**<br><br>***EX PARTE* TEMPORARY RESTRAINING ORDER WITH ASSET FREEZE, APPOINTMENT OF A TEMPORARY RECEIVER, AND OTHER EQUITABLE RELIEF, AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**<br><br>2:22 - MC 0 1 5 4 - KJM AC |

FIRST COAST MATCHMAKERS LLC, a
Florida limited liability company, also
d/b/a Wholesale Tradelines,

FINANCIAL CONSULTING
MANAGEMENT GROUP LLC, a Florida
limited liability company, and

RESOURCE MANAGEMENT
INVESTMENTS, LLC, a Florida limited
liability company,

     Defendants.

Plaintiff, the Federal Trade Commission ("FTC") has filed its Complaint for

Permanent Injunction, Monetary Relief, and Other Relief pursuant to Sections 13(b)

and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and

57b, (Dkt. # 1), and has moved, pursuant to Fed. R. Civ. P. 65(b), for a temporary

restraining order, asset freeze, other equitable relief, and an order to show cause why

a preliminary injunction should not issue against Michael Rando and Valerie Rando,

and Prosperity Training Technology LLC; Elite Customer Services, LLC; Digital

Business Scaling LLC; First Coast Matchmakers Inc.; First Coast Matchmakers

LLC; Financial Consulting Management Group LLC; and Resource Management

Investments, LLC. (Dkt. # 4).

## FINDINGS OF FACT

The Court, having considered the Complaint, the *ex parte* Motion for a
Temporary Restraining Order, declarations, exhibits, and the memorandum of points
and authorities filed in support thereof, and being otherwise advised, finds that:

A.    This Court has jurisdiction over the subject matter of this case, and
there is good cause to believe that it will have jurisdiction over all parties hereto and
that venue in this district is proper.

B.    In numerous instances, Defendants have operated a credit repair and
business opportunity scheme in which they, among other things:

    1. Deceptively claim they can quickly and legally improve
consumers' credit scores by removing most or all negative items
on their credit reports, causing a third party's credit history to
appear on their credit reports, and manipulating consumers'
identifying information, and that these services come with a
money-back guarantee;

    2. File, or caused to be filed, fake identity theft reports on the FTC's
identitytheft.gov website;

    3. Take prohibited advance fees, fail to honor cancellation requests
and provide refunds, and fail to make required disclosures
regarding their credit repair services;

3

4.     Deceptively claim consumers can profitably and legally operate a

business selling credit repair services and education and fail to

make required disclosures regarding their business opportunity;

and

C.     There is good cause to believe that Defendants Michael Rando; Valerie

Rando; Prosperity Training Technology LLC; Elite Customer Services, LLC; Digital

Business Scaling LLC; First Coast Matchmakers Inc.; First Coast Matchmakers

LLC; Financial Consulting Management Group LLC; and Resource Management

Investments, LLC have engaged in and are likely to engage in acts or practices that

violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a); multiple provisions of the

Credit Repair Organizations Act ("CROA"), 15 U.S.C. §§ 1679-1679j; multiple

provisions of the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310; and

multiple provisions of the FTC's Trade Regulation Rule entitled "Disclosure

Requirements and Prohibitions Concerning Business Opportunities" ("Business

Opportunity Rule" or "BOR"), 16 C.F.R. Part 437; and that Plaintiff is therefore

likely to prevail on the merits of this action. As demonstrated by detailed evidence,

including declarations from FICO and Equifax, declarations from consumers,

transcripts of undercover calls, consumer complaint analyses, identity theft report

analyses, Defendants' own marketing statements, and the additional documentation

filed by the FTC, the FTC has established a likelihood of success in showing that

4

Defendants have operated an illegal credit repair and money-making scheme and made false, misleading, and deceptive misrepresentations.

      D.     There is good cause to believe that immediate and irreparable harm will result from Defendants' ongoing violations of the FTC Act, CROA, the TSR, and the BOR unless Defendants are restrained and enjoined by order of this Court.

      E.     There is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for consumers – including rescission or reformation of contracts, the refund of money, and the return of property – will occur from the sale, transfer, destruction, or other disposition or concealment by Defendants of their assets or records, unless Defendants are immediately restrained and enjoined by order of this Court; and that, in accordance with Fed. R. Civ. P. 65(b), the interests of justice require that this Order be granted without prior notice to Defendants. Thus, there is good cause for relieving Plaintiff of the duty to provide Defendants with prior notice of its Motion for a Temporary Restraining Order.

      F.     Good cause exists for appointing a temporary Receiver over the Receivership Entities, freezing Defendants' assets, permitting the Plaintiff and the Receiver immediate access to the Defendants' business premises, and permitting the Plaintiff and the Receiver to take expedited discovery.

      G.     Weighing the equities and considering Plaintiff's likelihood of ultimate success on the merits, a temporary restraining order with an asset freeze, the

appointment of a temporary Receiver, immediate access to business premises, expedited discovery, and other equitable relief is in the public interest.

      H.     This Court has authority to issue this Order pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b; Federal Rule of Civil Procedure 65; and the All Writs Act, 28 U.S.C. § 1651.

      I.     No security is required of any agency of the United States for issuance of a temporary restraining order. Fed. R. Civ. P. 65(c).

## DEFINITIONS

For the purpose of this Order, the following definitions shall apply:

      A.     **"Asset"** means any legal or equitable interest in, right to, or claim to, any property, wherever located and by whomever held, whether tangible, intangible, digital, intellectual property, or otherwise.

      B.     **"Corporate Defendant(s)"** means Prosperity Training Technology LLC; Elite Customer Services, LLC; Digital Business Scaling LLC; First Coast Matchmakers Inc.; First Coast Matchmakers LLC; Financial Consulting Management Group LLC; Resource Management Investments, LLC; and each of their subsidiaries, affiliates, successors, and assigns.

      C.     **"Credit Repair Service"** means any service, in return for payment of money or other valuable consideration, for the express or implied purpose of: 1) improving any consumer's credit report, credit record, credit history, credit profile, credit score, or credit rating; or 2) providing any advice or assistance to any

6

consumer with regard to any activity or service the purpose of which is to improve a consumer's credit report, credit record, credit history, credit profile, credit score, or credit rating.

D.     **"Defendants"** means Corporate Defendants and Individual Defendants, individually, collectively, or in any combination.

E.     **"Document"** is synonymous in meaning and equal in scope to the usage of "document" and "electronically stored information" in Federal Rule of Civil Procedure 34(a), Fed. R. Civ. P. 34(a), and includes writings, drawings, graphs, charts, photographs, sound and video recordings, images, Internet sites, web pages, websites, electronic correspondence, including e-mail and instant messages, contracts, accounting data, advertisements, FTP Logs, Server Access Logs, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, computer records, customer or sales databases and any other electronically stored information, including Documents located on remote servers or cloud computing systems, and other data or data compilations from which information can be obtained directly or, if necessary, after translation into a reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term.

F.     **"Earnings Claim"** means any oral, written, or visual representation to a consumer, prospective purchaser, or investor that conveys, expressly or by

implication, a specific level or range of actual or potential sales, or gross or net income or profits. Earnings claims include, but are not limited to any: 1) chart, table, or mathematical calculation that demonstrates possible results based upon a combination of variables; and 2) statements from which a consumer, prospective purchaser, or investor can reasonably infer that he or she will earn a minimum level of income (*e.g.* "earn enough to buy a Lamborghini," "earn a six-figure income," or "earn your investment back within one year").

G.    **"Electronic Data Host"** means any person or entity in the business of storing, hosting, or otherwise maintaining electronically stored information. This includes, but is not limited to, any entity hosting a website or server, and any entity providing "cloud based" electronic storage.

H.    **"Individual Defendant(s)"** means Michael Rando and Valerie Rando, individually, collectively, or in any combination.

I.    **"Person"** means a natural person, an organization or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

J.    **"Receiver"** means the temporary receiver appointed in Section XIII of this Order and any deputy receivers that shall be named by the temporary receiver.

K.    **"Receivership Entities"** means Corporate Defendants as well as any other entity that has conducted any business related to Defendants' credit repair and money-making scheme, including receipt of Assets derived from any activity that is

8

the subject of the Complaint in this matter, and that the Receiver determines is
controlled or owned by any Defendant.

## ORDER

### I. PROHIBITED CREDIT REPAIR ACTIVITIES

**IT IS THEREFORE ORDERED** that Defendants, Defendants' officers,

agents, employees, and attorneys, and all other persons in active concert or

participation with them, who receive actual notice of this Order by personal service

or otherwise, whether acting directly or indirectly, in connection with the

advertising, marketing, promoting, or offering for sale of any Credit Repair Service,

are temporarily restrained and enjoined from:

    A.    Misrepresenting or assisting others in misrepresenting, expressly or by
implication:

> 1. That any Person can remove negative information or hard
>    inquires from their own or any other Person's credit report, credit
>    record, credit history, or credit profile;
>
> 2. That any Person can substantially improve their own or any
>    other Person's credit score or credit rating;
>
> 3. That any Person is, or will add any Person as, an additional
>    authorized user on any other Person's credit card or line of credit
>    account;
>
> 4. That any Person is or was the victim of identity theft;

9

> 5.     Current or past identifying information (*e.g.* names, aliases,
> addresses, phone numbers, or employment history) on a
> consumer's credit report, credit record, credit history, or credit
> profile;
>
> 6.     Any other fact material to consumers concerning any Credit
> Repair Service, such as the total costs; any material restrictions,
> limitations, or conditions; or any material aspect of its
> performance, efficacy, nature, or central characteristics;

B.     Charging or receiving money or other valuable consideration for the performance of any Credit Repair Service: 1) before such service is fully performed, and 2) before providing the consumer with documentation in the form of a consumer report from a consumer reporting agency demonstrating the promised results have been achieved, with such report having been issued more than six months after the results were achieved.

C.     Failing to provide any Person with a written statement of "Consumer Credit File Rights Under State and Federal Law," in the form and manner required by 15 U.S.C. § 1679c(a);

D.     Failing to include in contracts for any Credit Repair Service the following required terms and conditions: a) a full and detailed description of the services to be performed for the consumer, including all guarantees of performance and an estimate of the date by which the performance of the services (to be

10

performed by Defendants or any other Person) will be complete or the length of the

period necessary to perform such services, and b) the specific conspicuous statement

in bold face type, in immediate proximity to the space reserved for the consumer's

signature on the contract, regarding the consumers' right to cancel the contract

without penalty or obligation at any time before the third business day after the date

on which the consumer signed the contract;

      E.    Failing to provide any Person with a separate form with the heading

"Notice of Cancellation," in the form and manner required by 15 U.S.C. § 1679e(b);

and

      F.    Failing to provide any Person with a copy of a completed contract and

all disclosures required under CROA, 15 U.S.C. §§ 1679-1679j, and a copy of any

other document such Person is required to sign.

## II.    PROHIBITED BUSINESS ACTIVITES

**IT IS THEREFORE ORDERED** that Defendants, Defendants' officers,

agents, employees, and attorneys, and all other persons in active concert or

participation with them, who receive actual notice of this Order by personal service

or otherwise, whether acting directly or indirectly, in connection with the

advertising, marketing, promoting, or offering for sale of any goods or services, are

temporarily restrained and enjoined from:

      A.    Making any Earnings Claim, unless the Earnings Claim is non-

misleading, and, at the time such claim is made, Defendants: 1) have a reasonable

basis for their claim; 2) have in their possession written materials that substantiate the claim; and 3) make the written substantiation available upon request to the consumer, potential purchaser, investor, the Receiver, or to the FTC;

B.    Failing to provide any consumer, potential purchaser, or investor with disclosure documents in the form and manner required by 16 C.F.R. §§ 437.2, 437.3(a)(1)-(5), and 437.4;

C.    Misrepresenting or assisting others in misrepresenting, expressly or by implication:

   1.    Any refund, money-back guarantee, or cancellation policy;

   2.    That Defendants' practices or advised practices are legal;

   3.    That consumers, using Defendants' products and services, are likely to profitably and legally operate a business selling credit repair services and education;

   4.    Any other fact material to consumers concerning any good or service, such as: the total costs; any material restrictions, limitations, or conditions; or any material aspect of its performance, efficacy, nature, or central characteristics.

## III.    PROHIBITION ON RELEASE OF CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or

indirectly, are hereby temporarily restrained and enjoined from disclosing, using,
transferring, or benefitting from customer information, including the name, address,
telephone number, email address, birth date, social security number, other
identifying information, or any data that enables access to a customer's account
(including a credit card, bank account, or other financial account), that any
Defendant obtained prior to entry of this Order.

Provided, however, that Defendants may disclose such identifying
information to a law enforcement agency, to their attorneys as required for their
defense, as required by any law, regulation, or court order, or in any filings,
pleadings or discovery in this action in the manner required by the Federal Rules of
Civil Procedure and by any protective order in the case.

## IV.   ASSET FREEZE

**IT IS FURTHER ORDERED** that Defendants and their officers, agents,
employees, and attorneys, and all other persons in active concert or participation
with any of them, who receive actual notice of this Order, whether acting directly or
indirectly, are hereby temporarily restrained and enjoined from:

A.     Transferring, liquidating, converting, encumbering, pledging, loaning,
selling, concealing, dissipating, disbursing, assigning, relinquishing, spending,
withdrawing, granting a lien or security interest or other interest in, or otherwise
disposing of any Assets that are:

1.     owned or controlled, directly or indirectly, by any Defendant;

13

      2.     held, in part or in whole, for the benefit of any Defendant;

      3.     in the actual or constructive possession of any Defendant; or

      4.     owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant.

      B.     Opening or causing to be opened any safe deposit boxes, commercial mail boxes, or storage facilities titled in the name of any Defendant or subject to access by any Defendant, except as necessary to comply with written requests from the Receiver acting pursuant to its authority under this Order;

      C.     Incurring charges or cash advances on any credit, debit, or ATM card issued in the name, individually or jointly, of any Corporate Defendant or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Defendant or of which any Defendant is an officer, director, member, or manager. This includes any corporate bankcard or corporate credit card account for which any Defendant is, or was on the date that this Order was signed, an authorized signor; or

      D.     Cashing any checks or depositing any money orders or cash received from consumers, clients, or customers of any Defendant.

      The Assets affected by this Section shall include: (1) all Assets of Defendants as of the time this Order is entered; and (2) Assets obtained by Defendants after this

14

Order is entered if those Assets are derived from any activity that is the subject of the Complaint in this matter or that is prohibited by this Order. This Section does not prohibit any transfers to the Receiver or repatriation of foreign Assets specifically required by this order. **SPECIAL NOTE: Provisions shall be made to allow the Individual Defendants to incur reasonable personal expenses during the pendency of this Order. Provision shall also be made to allow Defendants to hire counsel to represent them in this action.**

## V. DUTIES OF ASSET HOLDERS AND OTHER THIRD PARTIES

**IT IS FURTHER ORDERED** that any financial or brokerage institution, Electronic Data Host, credit card processor, payment processor, merchant bank, acquiring bank, independent sales organization, third party processor, payment gateway, insurance company, business entity, or person who receives actual notice of this Order (by service or otherwise) that:

(a) has held, controlled, or maintained custody, through an account or otherwise, of any Document on behalf of any Defendant or any Asset that has been: owned or controlled, directly or indirectly, by any Defendant; held, in part or in whole, for the benefit of any Defendant; in the actual or constructive possession of any Defendant; or owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant;

15

(b) has held, controlled, or maintained custody, through an account or otherwise, of any Document or Asset associated with credits, debits, or charges made on behalf of any Defendant, including reserve funds held by payment processors, credit card processors, merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies, or other entities; or

(c) has extended credit to any Defendant, including through a credit card account, shall:

A.    Hold, preserve, and retain within its control and prohibit the withdrawal, removal, alteration, assignment, transfer, pledge, encumbrance, disbursement, dissipation, relinquishment, conversion, sale, or other disposal of any such Document or Asset, as well as all Documents or other property related to such Assets, except by further order of this Court; provided, however, that this provision does not prohibit an Individual Defendant from incurring charges on a personal credit card established prior to entry of this Order, up to the pre-existing credit limit;

B.    Deny any person, except the Receiver, access to any safe deposit box, commercial mail box, or storage facility that is titled in the name of any Defendant, either individually or jointly, or otherwise subject to access by any Defendant;

C.    Provide Plaintiff's counsel and the Receiver, within three (3) days of receiving a copy of this Order, a sworn statement setting forth, for each Asset or account covered by this Section:

16

1.  The identification number of each such account or Asset;

2.  The balance of each such account, or a description of the nature and value of each such Asset as of the close of business on the day on which this Order is served, and, if the account or other Asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other Asset was remitted; and

3.  The identification of any safe deposit box, commercial mail box, or storage facility that is either titled in the name, individually or jointly, of any Defendant, or is otherwise subject to access by any Defendant; and

D.  Upon the request of Plaintiff's counsel or the Receiver, promptly provide Plaintiff's counsel and the Receiver with copies of all records or other Documents pertaining to each account covered by this Section or Asset, including originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, including wire transfers and wire transfer instructions, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and all logs and records pertaining to safe deposit boxes, commercial mail boxes, and storage facilities.

17

Provided, however, that this Section does not prohibit any transfers to the Receiver or repatriation of foreign Assets specifically required by this order.

## VI. FINANCIAL DISCLOSURES

**IT IS FURTHER ORDERED** that each Defendant, within five (5) days of service of this Order upon them, shall prepare and deliver to Plaintiff's counsel and the Receiver:

A. Completed financial statements on the forms attached to this Order as **Attachment A** (Financial Statement of Individual Defendant) for each Individual Defendant, and **Attachment B** (Financial Statement of Corporate Defendant) for each Corporate Defendant; and

B. Completed **Attachment C** (IRS Form 4506, Request for Copy of a Tax Return) for each Individual and Corporate Defendant.

## VII. FOREIGN ASSET REPATRIATION

**IT IS FURTHER ORDERED** that within five (5) days following the service of this Order, each Defendant shall:

A. Provide Plaintiff's counsel and the Receiver with a full accounting, verified under oath and accurate as of the date of this Order, of all Assets, Documents, and accounts outside of the United States which are: (1) titled in the name, individually or jointly, of any Defendant; (2) held by any person or entity for the benefit of any Defendant or for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or

18

controlled by any Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Defendant;

B. Take all steps necessary to provide Plaintiff's counsel and the Receiver access to all Documents and records that may be held by third parties located outside of the territorial United States of America, including signing the Consent to Release of Financial Records appended to this Order as **Attachment D**;

C. Transfer to the territory of the United States all Documents and Assets located in foreign countries which are: (1) titled in the name, individually or jointly, of any Defendant; (2) held by any person or entity for the benefit of any Defendant or for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Defendant; and

D. The same business day as any repatriation, (1) notify the Receiver and counsel for Plaintiff of the name and location of the financial institution or other entity that is the recipient of such Documents or Assets; and (2) serve this Order on any such financial institution or other entity.

### VIII. NON-INTERFERENCE WITH REPATRIATION

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or

19

indirectly, are hereby temporarily restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of foreign Assets, or in the hindrance of the repatriation required by this Order, including, but not limited to:

A. Sending any communication or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until such time that all Defendants' Assets have been fully repatriated pursuant to this Order; or

B. Notifying any trustee, protector or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a court order, until such time that all Defendants' Assets have been fully repatriated pursuant to this Order.

## IX. CONSUMER CREDIT REPORTS

IT IS FURTHER ORDERED that Plaintiff may obtain credit reports concerning any Defendants pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. 1681b(a)(1), and that, upon written request, any credit reporting agency from which such reports are requested shall provide them to Plaintiff.

## X. PRESERVATION OF RECORDS

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation

with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby temporarily restrained and enjoined from:

     A.     Destroying, erasing, falsifying, writing over, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, Documents that relate to: (1) the business, business practices, Assets, or business or personal finances of any Defendant; (2) the business practices or finances of entities directly or indirectly under the control of any Defendant; or (3) the business practices or finances of entities directly or indirectly under common control with any other Defendant; and

     B.     Failing to create and maintain Documents that, in reasonable detail, accurately, fairly, and completely reflect Defendants' incomes, disbursements, transactions, and use of Defendants' Assets.

## XI.   PRESERVATION OF RECORDS BY THIRD PARTIES

**IT IS FURTHER ORDERED** that any person who receives actual notice of this Order (by service or otherwise) that has held, controlled, or maintained custody of any Document on behalf of any Defendant that relates to the business or business practices of any Defendant or of any entity directly or indirectly under the control of any Defendant are hereby temporarily restrained and enjoined from destroying, erasing, falsifying, writing over, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any such Documents.

21

## XII.    REPORT OF NEW BUSINESS ACTIVITY

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents,

employees, and attorneys, and all other persons in active concert or participation

with any of them, who receive actual notice of this Order, whether acting directly or

indirectly, are hereby temporarily restrained and enjoined from creating, operating,

or exercising any control over any business entity, whether newly formed or

previously inactive, including any partnership, limited partnership, joint venture, sole

proprietorship, or corporation, without first providing Plaintiff's counsel and the

Receiver with a written statement disclosing: (1) the name of the business entity; (2)

the address and telephone number of the business entity; (3) the names of the

business entity's officers, directors, principals, managers, and employees; and (4) a

detailed description of the business entity's intended activities.

## XIII.    TEMPORARY RECEIVER

**IT IS FURTHER ORDERED** that Maria M. Yip is appointed as temporary

Receiver of the Receivership Entities with full powers of an equity receiver. The

Receiver shall be solely the agent of this Court in acting as Receiver under this

Order.

## XIV.    DUTIES AND AUTHORITY OF RECEIVER

**IT IS FURTHER ORDERED** that the Receiver is directed and authorized to

accomplish the following:

A.    Assume full control of Receivership Entities by removing, as the

Receiver deems necessary or advisable, any director, officer, independent contractor,

employee, attorney, or agent of any Receivership Entity from control of,
management of, or participation in, the affairs of the Receivership Entity;

B.      Take exclusive custody, control, and possession of all Assets and
Documents of, or in the possession, custody, or under the control of, any
Receivership Entity, wherever situated;

C.      Take exclusive custody, control, and possession of all Documents or
Assets associated with credits, debits, or charges made on behalf of any Receivership
Entity, wherever situated, including reserve funds held by payment processors, credit
card processors, merchant banks, acquiring banks, independent sales organizations,
third party processors, payment gateways, insurance companies, or other entities;

D.      Conserve, hold, manage, and prevent the loss of all Assets of the
Receivership Entities, and perform all acts necessary or advisable to preserve the
value of those Assets. The Receiver shall assume control over the income and profits
therefrom and all sums of money now or hereafter due or owing to the Receivership
Entities. The Receiver shall have full power to sue for, collect, and receive, all Assets
of the Receivership Entities and of other persons or entities whose interests are now
under the direction, possession, custody, or control of, the Receivership Entities.
Provided, however, that the Receiver shall not attempt to collect any amount from a
consumer if the Receiver believes the consumer's debt to the Receivership Entities
has resulted from the deceptive acts or practices or other violations of law alleged in
the Complaint in this matter, without prior Court approval;

23

E.     Obtain, conserve, hold, manage, and prevent the loss of all Documents

of the Receivership Entities, and perform all acts necessary or advisable to preserve

such Documents. The Receiver shall: divert mail; preserve all Documents of the

Receivership Entities that are accessible via electronic means (such as online access

to financial accounts and access to electronic documents held onsite or by Electronic

Data Hosts, by changing usernames, passwords or other log-in credentials; take

possession of all electronic Documents of the Receivership Entities stored onsite or

remotely; take whatever steps necessary to preserve all such Documents; and obtain

the assistance of the FTC's Digital Forensic Unit for the purpose of obtaining

electronic documents stored onsite or remotely.

F.     Choose, engage, and employ attorneys, accountants, appraisers, and

other independent contractors and technical specialists, as the Receiver deems

advisable or necessary in the performance of duties and responsibilities under the

authority granted by this Order;

G.     Make payments and disbursements from the receivership estate that are

necessary or advisable for carrying out the directions of, or exercising the authority

granted by, this Order, and to incur, or authorize the making of, such agreements as

may be necessary and advisable in discharging his or her duties as Receiver. The

Receiver shall apply to the Court for prior approval of any payment of any debt or

obligation incurred by the Receivership Entities prior to the date of entry of this

Order, except payments that the Receiver deems necessary or advisable to secure Assets of the Receivership Entities, such as rental payments;

  H. Take all steps necessary to secure and take exclusive custody of each location from which the Receivership Entities operate their businesses. Such steps may include, but are not limited to, any of the following, as the Receiver deems necessary or advisable: (1) securing the location by changing the locks and alarm codes and disconnecting any internet access or other means of access to the computers, servers, internal networks, or other records maintained at that location; and (2) requiring any persons present at the location to leave the premises, to provide the Receiver with proof of identification, and/or to demonstrate to the satisfaction of the Receiver that such persons are not removing from the premises Documents or Assets of the Receivership Entities. Law enforcement personnel, including, but not limited to, police or sheriffs, may assist the Receiver in implementing these provisions in order to keep the peace and maintain security. If requested by the Receiver, the United States Marshal will provide appropriate and necessary assistance to the Receiver to implement this Order and is authorized to use any necessary and reasonable force to do so;

  I. Take all steps necessary to prevent the modification, destruction, or erasure of any web page or website registered to and operated, in whole or in part, by any Defendants, and to provide access to all such web page or websites to Plaintiff's

representatives, agents, and assistants, as well as Defendants and their representatives;

J. Enter into and cancel contracts and purchase insurance as advisable or necessary;

K. Prevent the inequitable distribution of Assets and determine, adjust, and protect the interests of consumers who have transacted business with the Receivership Entities;

L. Make an accounting, as soon as practicable, of the Assets and financial condition of the receivership and file the accounting with the Court and deliver copies thereof to all parties;

M. Institute, compromise, adjust, appear in, intervene in, defend, dispose of, or otherwise become party to any legal action in state, federal or foreign courts or arbitration proceedings as the Receiver deems necessary and advisable to preserve or recover the Assets of the Receivership Entities, or to carry out the Receiver's mandate under this Order, including but not limited to, actions challenging fraudulent or voidable transfers;

N. Issue subpoenas to obtain Documents and records pertaining to the receivership, and conduct discovery in this action on behalf of the receivership estate, in addition to obtaining other discovery as set forth in this Order;

O. Open one or more bank accounts at designated depositories for funds of the Receivership Entities. The Receiver shall deposit all funds of the Receivership

26

Entities in such designated accounts and shall make all payments and disbursements from the receivership estate from such accounts. The Receiver shall serve copies of monthly account statements on all parties;

    P.     Maintain accurate records of all receipts and expenditures incurred as Receiver;

    Q.     Allow the Plaintiffs' representatives, agents, and assistants, as well as Defendants' representatives and Defendants themselves, reasonable access to the premises of the Receivership Entities, or any other premises where the Receivership Entities conduct business. The purpose of this access shall be to inspect and copy any and all books, records, Documents, accounts, and other property owned by, or in the possession of, the Receivership Entities or their agents. The Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access;

    R.     Allow the Plaintiffs' representatives, agents, and assistants, as well as Defendants and their representatives reasonable access to all Documents in the possession, custody, or control of the Receivership Entities;

    S.     Cooperate with reasonable requests for information or assistance from any state or federal civil or criminal law enforcement agency;

    T.     Suspend business operations of the Receivership Entities if in the judgment of the Receiver such operations cannot be continued legally and profitably;

    U.     If the Receiver identifies a nonparty entity as a Receivership Entity, promptly notify the entity as well as the parties, and inform the entity that it can

27

challenge the Receiver's determination by filing a motion with the Court. Provided,
however, that the Receiver may delay providing such notice until the Receiver has
established control of the nonparty entity and its assets and records, if the Receiver
determines that notice to the entity or the parties before the Receiver establishes
control over the entity may result in the destruction of records, dissipation of assets,
or any other obstruction of the Receiver's control of the entity;

V.      If in the Receiver's judgment the business operations cannot be
continued legally and profitably, take all steps necessary to ensure that any of the
Receivership Entities' web pages or websites relating to the activities alleged in the
Complaint cannot be accessed by the public, or are modified for consumer education
and/or informational purposes, and take all steps necessary to ensure that any
telephone numbers associated with the Receivership Entities cannot be accessed by
the public, or are answered solely to provide consumer education or information
regarding the status of operations; and

W.      Prepare a written report at or before any hearing described in Paragraph
XXVII, that describes (1) the steps taken by the Receiver to implement the terms of
the Order; (2) the value of all assets and sum of all liabilities of the Receivership
Entities; (3) the steps the Receiver intends to take in the future to protect receivership
assets, recover receivership assets from third parties, and adjust receivership
liabilities; (4) the Receiver's opinion on whether any portion of the business of any of

28

the Receivership Entities can continue to operate legally and profitably; and (5) any other matters which the Receiver believes should be brought to the Court's attention.

## XV.    TRANSFER OF RECEIVERSHIP PROPERTY TO RECEIVER

**IT IS FURTHER ORDERED** that Defendants and any other person, with possession, custody or control of property of, or records relating to, the Receivership Entities shall, upon notice of this Order by personal service or otherwise, fully cooperate with and assist the Receiver in taking and maintaining possession, custody, or control of the Assets and Documents of the Receivership Entities and immediately transfer or deliver to the Receiver possession, custody, and control of, the following:

A.    All Assets held by or for the benefit of the Receivership Entities;

B.    All Documents or Assets associated with credits, debits, or charges made on behalf of any Receivership Entity, wherever situated, including reserve funds held by payment processors, credit card processors, merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies, or other entities;

C.    All Documents of or pertaining to the Receivership Entities, including all communications occurring via electronic mail, electronic messaging service, or encrypted messaging service (including but not limited to Signal or WhatsApp);

D.    All computers, electronic devices, mobile devices and machines used to conduct the business of the Receivership Entities, even if such computers, electronic devices, mobile devices, and machines are also used for non-business purposes;

E.    All Assets and Documents belonging to other persons or entities whose interests are under the direction, possession, custody, or control of the Receivership Entities; and

F.    All keys, codes, user names and passwords necessary to gain or to secure access to any Assets or Documents of or pertaining to the Receivership Entities, including access to their business premises, means of communication, accounts, computer systems (onsite and remote), Electronic Data Hosts, encrypted messaging services, or other property.

In the event that any person or entity fails to deliver or transfer any Asset or Document, or otherwise fails to comply with any provision of this Section, the Receiver may file an Affidavit of Non-Compliance regarding the failure and a motion seeking compliance or a contempt citation.

## XVI.   PROVISION OF INFORMATION TO RECEIVER

**IT IS FURTHER ORDERED** that Defendants shall immediately provide to the Receiver:

A.    A list of all Assets and accounts of the Receivership Entities that are held in any name other than the name of a Receivership Entity, or by any person or entity other than a Receivership Entity;

30

B.      A list of all agents, employees, officers, attorneys, servants and those

persons in active concert and participation with the Receivership Entities, or who

have been associated or done business with the Receivership Entities; and

C.      A description of any documents covered by attorney-client privilege or

attorney work product, including files where such documents are likely to be located,

authors or recipients of such documents, and search terms likely to identify such

electronic documents.

### XVII.    COOPERATION WITH THE RECEIVER

**IT IS FURTHER ORDERED** that Defendants; Receivership Entities;

Defendants' or Receivership Entities' officers, agents, employees, and attorneys, all

other persons in active concert or participation with any of them, and any other

person with possession, custody, or control of property of or records relating to the

Receivership Entities who receive actual notice of this Order shall fully cooperate

with and assist the Receiver. This cooperation and assistance shall include, but is not

limited to, providing information to the Receiver that the Receiver deems necessary

to exercise the authority and discharge the responsibilities of the Receiver under this

Order; providing any keys, codes, user names and passwords required to access any

computers, electronic devices, mobile devices, and machines (onsite or remotely) and

any cloud account (including specific method to access account) or electronic file in

any medium; advising all persons who owe money to any Receivership Entity that

all debts should be paid directly to the Receiver; and transferring funds at the

Receiver's direction and producing records related to the Assets and sales of the Receivership Entities.

## XVIII. NON-INTERFERENCE WITH THE RECEIVER

**IT IS FURTHER ORDERED** that Defendants; Receivership Entities; Defendants' or Receivership Entities' officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, and any other person served with a copy of this Order, are hereby restrained and enjoined from directly or indirectly:

A.   Interfering with the Receiver's efforts to manage, or take custody, control, or possession of, the Assets or Documents subject to the receivership;

B.   Transacting any of the business of the Receivership Entities;

C.   Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any Assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Entities; or

D.   Refusing to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any order of this Court.

## XIX. STAY OF ACTIONS

**IT IS FURTHER ORDERED** that, except by leave of this Court, during the pendency of the receivership ordered herein, Defendants, Defendants' officers, agents, employees, attorneys, and all other persons in active concert or participation

with any of them, who receive actual notice of this Order, and their corporations, subsidiaries, divisions, or affiliates, and all investors, creditors, stockholders, lessors, customers and other persons seeking to establish or enforce any claim, right, or interest against or on behalf of Defendants, and all others acting for or on behalf of such persons, are hereby enjoined from taking action that would interfere with the exclusive jurisdiction of this Court over the Assets or Documents of the Receivership Entities, including, but not limited to:

     A.     Filing or assisting in the filing of a petition for relief under the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, or of any similar insolvency proceeding on behalf of the Receivership Entities;

     B.     Commencing, prosecuting, or continuing a judicial, administrative, or other action or proceeding against the Receivership Entities, including the issuance or employment of process against the Receivership Entities, except that such actions may be commenced if necessary to toll any applicable statute of limitations; or

     C.     Filing or enforcing any lien on any asset of the Receivership Entities, taking or attempting to take possession, custody, or control of any Asset of the Receivership Entities; or attempting to foreclose, forfeit, alter, or terminate any interest in any Asset of the Receivership Entities, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise.

     Provided, however, that this Order does not stay: (1) the commencement or continuation of a criminal action or proceeding; (2) the commencement or

continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or (3) the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

## XX. COMPENSATION OF RECEIVER

**IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the Assets now held by, in the possession or control of, or which may be received by, the Receivership Entities. The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of entry of this Order. The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

## XXI. RECEIVER'S BOND

**IT IS FURTHER ORDERED** that the Receiver is not required to file with the Clerk of this Court a bond until further order of this Court, conditioned that the Receiver will well and truly perform the duties of the office and abide by and perform all acts the Court directs.

## XXII. IMMEDIATE ACCESS TO BUSINESS PREMISES AND RECORDS

**IT IS FURTHER ORDERED** that:

34

A.    In order to allow Plaintiff and the Receiver to preserve Assets and evidence relevant to this action and to expedite discovery, Plaintiff and the Receiver, and their representatives, agents, contractors, and assistants, shall have immediate access to the business premises and storage facilities, owned, controlled, or used by the Receivership Entities. Such locations include, but are not limited to, 13107 Atlantic Blvd, suite 201 Jacksonville, FL 32225, and 13475 Atlantic Blvd., Unit 8, Jacksonville, FL 32225, and any offsite location or commercial mailbox used by the Receivership Entities. The Receiver may exclude Defendants, Receivership Entities, and their employees from the business premises during the immediate access;

B.    Plaintiff and the Receiver, and their representatives, agents, contractors, and assistants, are authorized to remove Documents from the Receivership Entities' premises in order that they may be inspected, inventoried, and copied. Plaintiff shall return any removed materials to the Receiver within five (5) business days of completing inventorying and copying, or such time as is agreed upon by Plaintiff and the Receiver;

C.    Plaintiff's access to the Receivership Entities' documents pursuant to this Section shall not provide grounds for any Defendant to object to any subsequent request for documents served by Plaintiff;

D.    Plaintiff and the Receiver, and their representatives, agents, contractors, and assistants, are authorized to obtain the assistance of federal, state and local law

enforcement officers as they deem necessary to effect service and to implement peacefully the provisions of this Order;

E.     If any Documents, computers, or electronic storage devices containing information related to the business practices or finances of the Receivership Entities are at a location other than those listed herein, including personal residence(s) of any Defendant, then, immediately upon receiving notice of this order, Defendants and Receivership Entities shall produce to the Receiver all such Documents, computers, and electronic storage devices, along with any codes or passwords needed for access. In order to prevent the destruction of computer data, upon service of this Order, any such computers or electronic storage devices shall be powered down in the normal course of the operating system used on such devices and shall not be powered up or used until produced for copying and inspection; and

F.     If any communications or records of any Receivership Entity are stored with an Electronic Data Host, such Entity shall, immediately upon receiving notice of this order, provide the Receiver with the username, passwords, and any other login credential needed to access the communications and records, and shall not attempt to access, or cause a third-party to attempt to access, the communications or records.

## XXIII.    DISTRIBUTION OF ORDER BY DEFENDANTS

**IT IS FURTHER ORDERED** that Defendants shall immediately provide a copy of this Order to each affiliate, telemarketer, marketer, sales entity, successor,

assign, member, officer, director, employee, agent, independent contractor, client,
attorney, spouse, subsidiary, division, and representative of any Defendant, and
shall, within ten (10) days from the date of entry of this Order, and provide Plaintiff
and the Receiver with a sworn statement that this provision of the Order has been
satisfied, which statement shall include the names, physical addresses, phone
number, and email addresses of each such person or entity who received a copy of
the Order. Furthermore, Defendants shall not take any action that would encourage
officers, agents, members, directors, employees, salespersons, independent
contractors, attorneys, subsidiaries, affiliates, successors, assigns or other persons or
entities in active concert or participation with them to disregard this Order or believe
that they are not bound by its provisions.

## XXIV.    EXPEDITED DISCOVERY

**IT IS FURTHER ORDERED** that, notwithstanding the provisions of the
Fed. R. Civ. P. 26(d) and (f) and 30(a)(2)(A)(iii), and pursuant to Fed. R. Civ. P.
30(a), 33, 34, and 45, Plaintiff and the Receiver are granted leave, at any time after
service of this Order, to conduct limited expedited discovery for the purpose of
discovering: (1) the nature, location, status, and extent of Defendants' Assets; (2) the
nature, location, and extent of Defendants' business transactions and operations; (3)
Documents reflecting Defendants' business transactions and operations; or (4)
compliance with this Order. The limited expedited discovery set forth in this Section
shall proceed as follows:

37

A.     Plaintiff and the Receiver may take the deposition of parties and non-parties. Forty-eight (48) hours' notice shall be sufficient notice for such depositions. The limitations and conditions set forth in Rules 30(a)(2)(A) and 31(a)(2)(A) of the Federal Rules of Civil Procedure regarding subsequent depositions of an individual shall not apply to depositions taken pursuant to this Section. Any such deposition taken pursuant to this Section shall not be counted towards the deposition limit set forth in Rules 30(a)(2)(A) and 31(a)(2)(A) and depositions may be taken by telephone or other remote electronic means.

B.     Plaintiff and the Receiver may serve upon parties requests for production of Documents or inspection that require production or inspection within five (5) days of service, provided, however, that three (3) days of notice shall be deemed sufficient for the production of any such Documents that are maintained or stored only in an electronic format.

C.     Plaintiff and the Receiver may serve upon parties interrogatories that require response within five (5) days of service.

D.     The Plaintiff and the Receiver may serve subpoenas upon non-parties that direct production or inspection within five (5) days of service.

E.     Service of discovery upon a party to this action, taken pursuant to this Section, shall be sufficient if made by facsimile, email, or by overnight delivery.

F.     Any expedited discovery taken pursuant to this Section is in addition to, and is not subject to, the limits on discovery set forth in the Federal Rules of Civil

Procedure and the Local Rules of this Court. The expedited discovery permitted by this Section does not require a meeting or conference of the parties, pursuant to Rules 26(d) & (f) of the Federal Rules of Civil Procedure.

      G.     The Parties are exempted from making initial disclosures under Fed. R. Civ. P. 26(a)(1) until further order of this Court.

## XXV.    SERVICE OF THIS ORDER

**IT IS FURTHER ORDERED** that copies of this Order as well as the Motion for Temporary Restraining Order and all other pleadings, Documents, and exhibits filed contemporaneously with that Motion (other than the complaint and summons), may be served by any means, including facsimile transmission, electronic mail or other electronic messaging, personal or overnight delivery, U.S. Mail or FedEx, by agents and employees of Plaintiff, by any law enforcement agency, or by private process server, upon any Defendant or any person (including any financial institution) that may have possession, custody or control of any Asset or Document of any Defendant, or that may be subject to any provision of this Order pursuant to Rule 65(d)(2) of the Federal Rules of Civil Procedure. For purposes of this Section, service upon any branch, subsidiary, affiliate or office of any entity shall effect service upon the entire entity.

## XXVI.    CORRESPONDENCE AND SERVICE ON PLAINTIFF

**IT IS FURTHER ORDERED** that, for the purpose of this Order, all correspondence and service of pleadings on Plaintiff shall be addressed to:

Hong Park
Brian M. Welke
Sana Chaudhry
FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue NW, CC 9528
Washington, DC 20580
Telephone: 202-326-2158 (Park); -2897 (Welke); -2679 (Chaudhry)
Facsimile: 202-326-3768
Email: hpark@ftc.gov; bwelke@ftc.gov; schaudhry@ftc.gov

## XXVII.    PRELIMINARY INJUNCTION HEARING

**IT IS FURTHER ORDERED** that, pursuant to Fed. R. Civ. P. 65(b),

Defendants shall appear on **May 12th, 2022**, at **4:30 PM**, before the undersigned, in

the United States Courthouse, Courtroom 10D, 300 North Hogan Street,

Jacksonville, Florida,[1] to show cause why this Court should not enter a preliminary

injunction, pending final ruling on the Complaint against Defendants, enjoining the

violations of the law alleged in the Complaint, continuing the freeze of their Assets,

continuing the receivership, and imposing such additional relief as may be

appropriate. **The temporary receiver is also directed to appear in person at the**

**hearing.**

## XXVIII.    BRIEFS AND AFFIDAVITS CONCERNING PRELIMINARY INJUNCTION

**IT IS FURTHER ORDERED** that:

---

[1] All persons entering the Courthouse must present photo identification to Court
Security Officers. Although cell phones, laptop computers, and similar electronic
devices are not generally allowed in the building, counsel are permitted to bring
those items with them upon presentation to Court Security Officers of this Order.
The parties are also advised to consult the Court's current coronavirus protocols,
which are posted on the Court's website, www.flmd.uscourts.gov.

A.      Defendants shall file with the Court and serve on Plaintiff's counsel a response to Plaintiff's Motion no later than **May 10, 2022**. Filings must be served by personal or overnight delivery, facsimile or email, and be received by the other party no later than 5:00 p.m. Eastern Time on the appropriate dates set forth in this Section.

G.      The May 12, 2022 hearing will be a **non-evidentiary hearing**. An evidentiary hearing on Plaintiff's request for a preliminary injunction is not necessary unless Defendants demonstrate that they have, and intend to introduce, evidence that raises a genuine and material factual issue. The question of whether this Court should enter a preliminary injunction shall be resolved on the pleadings, declarations, exhibits, and memoranda filed by, and oral argument of, the parties. **Any motion to permit such testimony may be raised at the May 12, 2022 hearing, after which the Court will determine whether an evidentiary hearing is necessary.**

## XXIX.      RULING ON THE MOTION

**IT IS FURTHER ORDERED** that, as described herein, the FTC's Ex Parte Motion for Temporary Restraining Order with Asset Freeze, Immediate Access to Documents and Premises, and Appointment of a Receiver with Order to Show Cause Why the Court Should not Issue a Preliminary Injunction (Dkt. #4) is **GRANTED**. This Order shall expire fourteen (14) days from the date of entry noted below, unless within such time, the Order is extended for an additional period pursuant to Fed. R. Civ. P. 65(b)(2).

## XXX.   RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this

matter for all purposes.

## XXXI.   ADMONITION

**This Order gives the FTC broad temporary relief. While the Court believes**

**this to be an appropriate use of the Court's equitable authority, the Court**

**cautions the FTC and the Receiver to act appropriately in their interactions with**

**Defendants and to exercise the authority given by this Order judiciously.**

**SO ORDERED**, this 3rd day of May, 2022 at 3:58 PM.

*Timothy J. Corrigan*

TIMOTHY J. CORRIGAN
United States District Judge

Copies to:

Counsel of Record

Defendants

# Attachment A

**FEDERAL TRADE COMMISSION**

**FINANCIAL STATEMENT OF INDIVIDUAL DEFENDANT**

**Definitions and Instructions:**

1. Complete all items. Enter "None" or "N/A" ("Not Applicable") in the first field only of any item that does not apply to you. If you cannot fully answer a question, explain why.

2. "Dependents" include your spouse, live-in companion, dependent children, or any other person, whom you or your spouse (or your children's other parent) claimed or could have claimed as a dependent for tax purposes at any time during the past five years.

3. "Assets" and "Liabilities" include ALL assets and liabilities, located within the United States or any foreign country or territory, whether held individually or jointly and whether held by you, your spouse, or your dependents, or held by others for the benefit of you, your spouse, or your dependents.

4. Attach continuation pages as needed. On the financial statement, state next to the Item number that the Item is being continued. On the continuation page(s), identify the Item number(s) being continued.

5. Type or print legibly.

6. Initial each page in the space provided in the lower right corner.

7. Sign and date the completed financial statement on the last page.

**Penalty for False Information:**

Federal law provides that any person may be imprisoned for not more than five years, fined, or both, if such person:

    (1) "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or devise a material fact; makes any materially false, fictitious or fraudulent statement or representation; or makes or uses any false writing or document knowing the same to contain any materially false, fictitious or fraudulent statement or entry" (18 U.S.C. § 1001);

    (2) "in any . . . statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true" (18 U.S.C. § 1621); or

    (3) "in any ( . . . statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information . . . knowing the same to contain any false material declaration" (18 U.S.C. § 1623).

For a felony conviction under the provisions cited above, federal law provides that the fine may be not more than the greater of (i) $250,000 for an individual or $500,000 for a corporation, or (ii) if the felony results in pecuniary gain to any person or pecuniary loss to any person other than the defendant, the greater of twice the gross gain or twice the gross loss. 18 U.S.C. § 3571.

## BACKGROUND INFORMATION

### Item 1. Information About You

| Full Name | Social Security No. | | |
|---|---|---|---|

| Current Address of Primary Residence | Driver's License No. | | State Issued |
|---|---|---|---|

| | Phone Numbers<br>Home: (    ) <br>Fax:    (    ) | Date of Birth:    /    / <br>(mm/dd/yyyy) <br>Place of Birth |
|---|---|---|

| ☐Rent ☐Own    From (Date):    /    / <br>(mm/dd/yyyy) | E-Mail Address |
|---|---|
| Internet Home Page | |

### Previous Addresses for past five years (if required, use additional pages at end of form)

| Address | From:    /    / <br>(mm/dd/yyyy)    Until:    /    / <br>(mm/dd/yyyy) <br><br>☐Rent ☐Own |
|---|---|
| Address | From:    /    /    Until:    /    / <br><br>☐Rent ☐Own |
| Address | From:    /    /    Until:    /    / <br><br>☐Rent ☐Own |

Identify any other name(s) and/or social security number(s) you have used, and the time period(s) during which they were used:

### Item 2. Information About Your Spouse or Live-In Companion

| Spouse/Companion's Name | Social Security No. | Date of Birth<br>/    / <br>(mm/dd/yyyy) |
|---|---|---|
| Address (if different from yours) | Phone Number<br>(    ) | Place of Birth |
| | ☐Rent ☐Own    From (Date):    /    / <br>(mm/dd/yyyy) | |

Identify any other name(s) and/or social security number(s) you have used, and the time period(s) during which they were used:

| Employer's Name and Address | Job Title |
|---|---|
| | Years in Present Job | Annual Gross Salary/Wages<br>$ |

### Item 3. Information About Your Previous Spouse

| Name and Address | Social Security No. |
|---|---|
| | Date of Birth<br>/    / <br>(mm/dd/yyyy) |

### Item 4. Contact Information (name and address of closest living relative other than your spouse)

| Name and Address | Phone Number<br>(    ) |
|---|---|

Initials: _____

## Item 5. Information About Dependents (whether or not they reside with you)

| Name and Address | Social Security No. | Date of Birth / / (mm/dd/yyyy) |
| | Relationship | |

| Name and Address | Social Security No. | Date of Birth / / (mm/dd/yyyy) |
| | Relationship | |

| Name and Address | Social Security No. | Date of Birth / / (mm/dd/yyyy) |
| | Relationship | |

| Name and Address | Social Security No. | Date of Birth / / (mm/dd/yyyy) |
| | Relationship | |

## Item 6. Employment Information/Employment Income

Provide the following information for this year-to-date and for each of the previous five full years, for each business entity of which you were a director, officer, member, partner, employee (including self-employment), agent, owner, shareholder, contractor, participant or consultant at any time during that period. "Income" includes, but is not limited to, any salary, commissions, distributions, draws, consulting fees, loans, loan payments, dividends, royalties, and benefits for which you did not pay (e.g., health insurance premiums, automobile lease or loan payments) received by you or anyone else on your behalf.

| Company Name and Address | Dates Employed | | Income Received: Y-T-D & 5 Prior Yrs. | |
|---|---|---|---|---|
| | From (Month/Year) / | To (Month/Year) / | Year | Income |
| Ownership Interest? ☐ Yes ☐ No | | | 20 | $ $ |
| Positions Held | From (Month/Year) | To (Month/Year) | | $ |
| | / | / | | $ |
| | / | / | | $ |
| | / | / | | $ |
| Company Name and Address | Dates Employed | | Income Received: Y-T-D & 5 Prior Yrs. | |
| | From (Month/Year) / | To (Month/Year) / | Year | Income |
| Ownership Interest? ☐ Yes ☐ No | | | 20 | $ $ |
| Positions Held | From (Month/Year) | To (Month/Year) | | $ |
| | / | / | | $ |
| | / | / | | $ |
| | / | / | | $ |
| Company Name and Address | Dates Employed | | Income Received: Y-T-D & 5 Prior Yrs. | |
| | From (Month/Year) / | To (Month/Year) / | Year | Income |
| Ownership Interest? ☐ Yes ☐ No | | | 20 | $ $ |
| Positions Held | From (Month/Year) | To (Month/Year) | | $ |
| | / | / | | $ |
| | / | / | | $ |
| | / | / | | $ |

Initials: _____

## Item 7. Pending Lawsuits Filed By or Against You or Your Spouse

List all pending lawsuits that have been filed by or against you or your spouse in any court or before an administrative agency in the United States or in any foreign country or territory. *Note: At Item 12, list lawsuits that resulted in final judgments or settlements in your favor. At Item 21, list lawsuits that resulted in final judgments or settlements against you.*

| Caption of Proceeding | Court or Agency and Location | Case No. | Nature of Proceeding | Relief Requested | Status or Disposition |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

## Item 8. Safe Deposit Boxes

List all safe deposit boxes, located within the United States or in any foreign country or territory, whether held individually or jointly and whether held by you, your spouse, or any of your dependents, or held by others for the benefit of you, your spouse, or any of your dependents.

| Name of Owner(s) | Name & Address of Depository Institution | Box No. | Contents |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

Initials: _____

## FINANCIAL INFORMATION

**REMINDER:** When an item asks for information regarding your "assets" and "liabilities" include ALL assets and liabilities, located within the United States or in any foreign country or territory, or institution, whether held individually or jointly, and whether held by you, your spouse, or any of your dependents, or held by others for the benefit of you, your spouse, or any of your dependents. In addition, provide all documents requested in Item 24 with your completed Financial Statement.

### ASSETS

### Item 9. Cash, Bank, and Money Market Accounts

List cash on hand (as opposed to cash in bank accounts or other financial accounts) and all bank accounts, money market accounts, or other financial accounts, including but not limited to checking accounts, savings accounts, and certificates of deposit. The term "cash on hand" includes but is not limited to cash in the form of currency, uncashed checks, and money orders.

| a. Amount of Cash on Hand $ | | Form of Cash on Hand | | |
|---|---|---|---|---|
| b. Name on Account | Name & Address of Financial Institution | Account No. | | Current Balance |
| | | | | $ |
| | | | | $ |
| | | | | $ |
| | | | | $ |
| | | | | $ |

### Item 10. Publicly Traded Securities

List all publicly traded securities, including but not limited to, stocks, stock options, corporate bonds, mutual funds, U.S. government securities (including but not limited to treasury bills and treasury notes), and state and municipal bonds. Also list any U.S. savings bonds.

| Owner of Security | Issuer | Type of Security | No. of Units Owned |
|---|---|---|---|
| Broker House, Address | Broker Account No. | | |
| | Current Fair Market Value<br>$ | Loan(s) Against Security<br>$ | |
| Owner of Security | Issuer | Type of Security | No. of Units Owned |
| Broker House, Address | Broker Account No. | | |
| | Current Fair Market Value<br>$ | Loan(s) Against Security<br>$ | |
| Owner of Security | Issuer | Type of Security | No. of Units Owned |
| Broker House, Address | Broker Account No. | | |
| | Current Fair Market Value<br>$ | Loan(s) Against Security<br>$ | |

Initials: _____

## Item 11. Non-Public Business and Financial Interests

List all non-public business and financial interests, including but not limited to any interest in a non-public corporation, subchapter-S corporation, limited liability corporation ("LLC"), general or limited partnership, joint venture, sole proprietorship, international business corporation or personal investment corporation, and oil or mineral lease.

| Entity's Name & Address | Type of Business or Financial Interest (e.g., LLC, partnership) | Owner (e.g., self, spouse) | Ownership % | If Officer, Director, Member or Partner, Exact Title |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

## Item 12. Amounts Owed to You, Your Spouse, or Your Dependents

| Debtor's Name & Address | Date Obligation Incurred (Month/Year) / | Original Amount Owed $ | Nature of Obligation (if the result of a final court judgment or settlement, provide court name and docket number) |
|---|---|---|---|
|  | Current Amount Owed $ | Payment Schedule $ |  |
| Debtor's Telephone | Debtor's Relationship to You |  |  |
| Debtor's Name & Address | Date Obligation Incurred (Month/Year) / | Original Amount Owed $ | Nature of Obligation (if the result of a final court judgment or settlement, provide court name and docket number) |
|  | Current Amount Owed $ | Payment Schedule $ |  |
| Debtor's Telephone | Debtor's Relationship to You |  |  |

## Item 13. Life Insurance Policies

List all life insurance policies (including endowment policies) with any cash surrender value.

| Insurance Company's Name, Address, & Telephone No. | Beneficiary | Policy No. | Face Value $ |
|---|---|---|---|
|  | Insured | Loans Against Policy $ | Surrender Value $ |
| Insurance Company's Name, Address, & Telephone No. | Beneficiary | Policy No. | Face Value $ |
|  | Insured | Loans Against Policy $ | Surrender Value $ |

## Item 14. Deferred Income Arrangements

List all deferred income arrangements, including but not limited to, deferred annuities, pensions plans, profit-sharing plans, 401(k) plans, IRAs, Keoghs, other retirement accounts, and college savings plans (e.g., 529 Plans).

| Trustee or Administrator's Name, Address & Telephone No. | Name on Account | | Account No. | |
|---|---|---|---|---|
|  | Date Established / / (mm/dd/yyyy) | Type of Plan | Surrender Value before Taxes and Penalties $ | |
| Trustee or Administrator's Name, Address & Telephone No. | Name on Account | | Account No. | |
|  | Date Established / / | Type of Plan | Surrender Value before Taxes and Penalties $ | |

Initials: _____

## Item 15.  Pending Insurance Payments or Inheritances
List any pending insurance payments or inheritances owed to you.

| Type | Amount Expected | Date Expected (mm/dd/yyyy) |
|---|---|---|
| | $ | / / |
| | $ | / / |
| | $ | / / |

## Item 16.  Vehicles
List all cars, trucks, motorcycles, boats, airplanes, and other vehicles.

| Vehicle Type | Year | Registered Owner's Name | Purchase Price $ | Original Loan Amount $ | Current Balance $ |
|---|---|---|---|---|---|
| Make | | Registration State & No. | Account/Loan No. | Current Value $ | Monthly Payment $ |
| Model | | Address of Vehicle's Location | Lender's Name and Address | | |

| Vehicle Type | Year | Registered Owner's Name | Purchase Price $ | Original Loan Amount $ | Current Balance $ |
|---|---|---|---|---|---|
| Make | | Registration State & No. | Account/Loan No. | Current Value $ | Monthly Payment $ |
| Model | | Address of Vehicle's Location | Lender's Name and Address | | |

| Vehicle Type | Year | Registered Owner's Name | Purchase Price $ | Original Loan Amount $ | Current Balance $ |
|---|---|---|---|---|---|
| Make | | Registration State & No. | Account/Loan No. | Current Value $ | Monthly Payment $ |
| Model | | Address of Vehicle's Location | Lender's Name and Address | | |

| Vehicle Type | Year | Registered Owner's Name | Purchase Price $ | Original Loan Amount $ | Current Balance $ |
|---|---|---|---|---|---|
| Make | | Registration State & No. | Account/Loan No. | Current Value $ | Monthly Payment $ |
| Model | | Address of Vehicle's Location | Lender's Name and Address | | |

## Item 17.  Other Personal Property
List all other personal property not listed in Items 9-16 by category, whether held for personal use, investment or any other reason, including but not limited to coins, stamps, artwork, gemstones, jewelry, bullion, other collectibles, copyrights, patents, and other intellectual property.

| Property Category (e.g., artwork, jewelry) | Name of Owner | Property Location | Acquisition Cost | Current Value |
|---|---|---|---|---|
| | | | $ | $ |
| | | | $ | $ |
| | | | $ | $ |

Initials: _____

## Item 18. Real Property
List all real property interests (including any land contract)

| Property's Location | Type of Property | Name(s) on Title or Contract and Ownership Percentages |
|---|---|---|
| | | |

| Acquisition Date (mm/dd/yyyy)<br>/   / | Purchase Price<br>$ | Current Value<br>$ | Basis of Valuation |
|---|---|---|---|
| | | | |

| Lender's Name and Address | Loan or Account No. | Current Balance On First Mortgage or Contract<br>$ |
|---|---|---|
| | | Monthly Payment<br>$ |

| Other Mortgage Loan(s) (describe) | Monthly Payment<br>$ | ☐ Rental Unit |
|---|---|---|
| | Current Balance<br>$ | Monthly Rent Received<br>$ |

| Property's Location | Type of Property | Name(s) on Title or Contract and Ownership Percentages |
|---|---|---|
| | | |

| Acquisition Date (mm/dd/yyyy)<br>/   / | Purchase Price<br>$ | Current Value<br>$ | Basis of Valuation |
|---|---|---|---|
| | | | |

| Lender's Name and Address | Loan or Account No. | Current Balance On First Mortgage or Contract<br>$ |
|---|---|---|
| | | Monthly Payment<br>$ |

| Other Mortgage Loan(s) (describe) | Monthly Payment<br>$ | ☐ Rental Unit |
|---|---|---|
| | Current Balance<br>$ | Monthly Rent Received<br>$ |

# LIABILITIES

## Item 19. Credit Cards
List each credit card account held by you, your spouse, or your dependents, and any other credit cards that you, your spouse, or your dependents use, whether issued by a United States or foreign financial institution.

| Name of Credit Card (e.g., Visa, MasterCard, Department Store) | Account No. | Name(s) on Account | Current Balance |
|---|---|---|---|
| | | | $ |
| | | | $ |
| | | | $ |
| | | | $ |
| | | | $ |

## Item 20. Taxes Payable
List all taxes, such as income taxes or real estate taxes, owed by you, your spouse, or your dependents.

| Type of Tax | Amount Owed | Year Incurred |
|---|---|---|
| | $ | |
| | $ | |
| | $ | |

Initials: _____

## Item 21. Other Amounts Owed by You, Your Spouse, or Your Dependents

List all other amounts, not listed elsewhere in this financial statement, owed by you, your spouse, or your dependents.

| Lender/Creditor's Name, Address, and Telephone No. | | Nature of Debt (if the result of a court judgment or settlement, provide court name and docket number) | | | |
|---|---|---|---|---|---|
| | | Lender/Creditor's Relationship to You | | | |
| Date Liability Was Incurred<br>/ /<br>(mm/dd/yyyy) | Original Amount Owed<br>$ | | Current Amount Owed<br>$ | | Payment Schedule |
| Lender/Creditor's Name, Address, and Telephone No. | | Nature of Debt (if the result of a court judgment or settlement, provide court name and docket number) | | | |
| | | Lender/Creditor's Relationship to You | | | |
| Date Liability Was Incurred<br>/ /<br>(mm/dd/yyyy) | Original Amount Owed<br>$ | | Current Amount Owed<br>$ | | Payment Schedule |

## OTHER FINANCIAL INFORMATION

### Item 22. Trusts and Escrows

List all funds and other assets that are being held in trust or escrow by any person or entity for you, your spouse, or your dependents. Include any legal retainers being held on your behalf by legal counsel. Also list all funds or other assets that are being held in trust or escrow by you, your spouse, or your dependents, for any person or entity.

| Trustee or Escrow Agent's Name & Address | Date Established<br>(mm/dd/yyyy) | Grantor | Beneficiaries | Present Market Value of Assets* |
|---|---|---|---|---|
| | / / | | | $ |
| | / / | | | $ |
| | / / | | | $ |

*If the market value of any asset is unknown, describe the asset and state its cost, if you know it.

### Item 23. Transfers of Assets

List each person or entity to whom you have transferred, in the aggregate, more than $5,000 in funds or other assets during the previous five years by loan, gift, sale, or other transfer (exclude ordinary and necessary living and business expenses paid to unrelated third parties). For each such person or entity, state the total amount transferred during that period.

| Transferee's Name, Address, & Relationship | Property Transferred | Aggregate Value* | Transfer Date<br>(mm/dd/yyyy) | Type of Transfer<br>(e.g., Loan, Gift) |
|---|---|---|---|---|
| | | $ | / / | |
| | | $ | / / | |
| | | $ | / / | |

*If the market value of any asset is unknown, describe the asset and state its cost, if you know it.

Initials: _____

## Item 24. Document Requests
Provide copies of the following documents with your completed Financial Statement.

| | |
|---|---|
| | Federal tax returns filed during the last three years by or on behalf of you, your spouse, or your dependents. |
| | All applications for bank loans or other extensions of credit (other than credit cards) that you, your spouse, or your dependents have submitted within the last two years, including by obtaining copies from lenders if necessary. |
| Item 9 | For each bank account listed in Item 9, all account statements for the past 3 years. |
| Item 11 | For each business entity listed in Item 11, provide (including by causing to be generated from accounting records) the most recent balance sheet, tax return, annual income statement, the most recent year-to-date income statement, and all general ledger files from account records. |
| Item 17 | All appraisals that have been prepared for any property listed in Item 17, including appraisals done for insurance purposes. You may exclude any category of property where the total appraised value of all property in that category is less than $2,000. |
| Item 18 | All appraisals that have been prepared for real property listed in Item 18. |
| Item 21 | Documentation for all debts listed in Item 21. |
| Item 22 | All executed documents for any trust or escrow listed in Item 22. Also provide any appraisals, including insurance appraisals that have been done for any assets held by any such trust or in any such escrow. |

## SUMMARY FINANCIAL SCHEDULES

## Item 25. Combined Balance Sheet for You, Your Spouse, and Your Dependents

| Assets | | Liabilities | |
|---|---|---|---|
| Cash on Hand (Item 9) | $ | Loans Against Publicly Traded Securities (Item 10) | $ |
| Funds Held in Financial Institutions (Item 9) | $ | Vehicles - Liens (Item 16) | $ |
| U.S. Government Securities (Item 10) | $ | Real Property – Encumbrances (Item 18) | $ |
| Publicly Traded Securities (Item 10) | $ | Credit Cards (Item 19) | $ |
| Non-Public Business and Financial Interests (Item 11) | $ | Taxes Payable (Item 20) | $ |
| Amounts Owed to You (Item 12) | $ | Amounts Owed by You (Item 21) | $ |
| Life Insurance Policies (Item 13) | $ | **Other Liabilities (Itemize)** | |
| Deferred Income Arrangements (Item 14) | $ | | $ |
| Vehicles (Item 16) | $ | | $ |
| Other Personal Property (Item 17) | $ | | $ |
| Real Property (Item 18) | $ | | $ |
| **Other Assets (Itemize)** | | | $ |
| | $ | | $ |
| | $ | | $ |
| | $ | | $ |
| **Total Assets** | $ | **Total Liabilities** | $ |

## Item 26. Combined Current Monthly Income and Expenses for You, Your Spouse, and Your Dependents
Provide the current monthly income and expenses for you, your spouse, and your dependents. Do not include credit card payments separately; rather, include credit card expenditures in the appropriate categories.

| Income (State source of each Item) | | Expenses | |
|---|---|---|---|
| Salary - After Taxes<br>Source: | $ | Mortgage or Rental Payments for Residence(s) | $ |
| Fees, Commissions, and Royalties<br>Source: | $ | Property Taxes for Residence(s) | $ |
| Interest<br>Source: | $ | Rental Property Expenses, Including Mortgage Payments, Taxes, and Insurance | $ |
| Dividends and Capital Gains<br>Source: | $ | Car or Other Vehicle Lease or Loan Payments | $ |
| Gross Rental Income<br>Source: | $ | Food Expenses | $ |
| Profits from Sole Proprietorships<br>Source: | $ | Clothing Expenses | $ |
| Distributions from Partnerships, S-Corporations, and LLCs<br>Source: | $ | Utilities | $ |

Initials: _____

**Item 26. Combined Current Monthly Income and Expenses for You, Your Spouse, and Your Dependents (cont.)**

| | | | |
|---|---|---|---|
| Distributions from Trusts and Estates Source: | $ | Medical Expenses, Including Insurance | $ |
| Distributions from Deferred Income Arrangements Source: | $ | Other Insurance Premiums | $ |
| Social Security Payments | $ | Other Transportation Expenses | $ |
| Alimony/Child Support Received | $ | **Other Expenses (Itemize)** | |
| Gambling Income | $ | | $ |
| **Other Income (Itemize)** | | | $ |
| | $ | | $ |
| | $ | | $ |
| | $ | | $ |
| **Total Income** | $ | **Total Expenses** | $ |

## ATTACHMENTS

**Item 27. Documents Attached to this Financial Statement**
List all documents that are being submitted with this financial statement. For any Item 24 documents that are not attached, explain why.

| Item No. Document Relates To | Description of Document |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |

I am submitting this financial statement with the understanding that it may affect action by the Federal Trade Commission or a federal court. I have used my best efforts to obtain the information requested in this statement. The responses I have provided to the items above are true and contain all the requested facts and information of which I have notice or knowledge. I have provided all requested documents in my custody, possession, or control. I know of the penalties for false statements under 18 U.S.C. § 1001, 18 U.S.C. § 1621, and 18 U.S.C. § 1623 (five years imprisonment and/or fines). I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on:

_____

(Date)                    Signature

# Attachment B

# FEDERAL TRADE COMMISSION

## FINANCIAL STATEMENT OF CORPORATE DEFENDANT

**Instructions**:

1.  Complete all items. Enter "None" or "N/A" ("Not Applicable") where appropriate. If you cannot fully answer a question, explain why.

2.  The font size within each field will adjust automatically as you type to accommodate longer responses.

3.  In completing this financial statement, "the corporation" refers not only to this corporation but also to each of its predecessors that are not named defendants in this action.

4.  When an Item asks for information about assets or liabilities "held by the corporation," include <u>ALL</u> such assets and liabilities, located within the United States or elsewhere, held by the corporation or held by others for the benefit of the corporation.

5.  Attach continuation pages as needed. On the financial statement, state next to the Item number that the Item is being continued. On the continuation page(s), identify the Item number being continued.

6.  Type or print legibly.

7.  An officer of the corporation must sign and date the completed financial statement on the last page and initial each page in the space provided in the lower right corner.

**Penalty for False Information**:

Federal law provides that any person may be imprisoned for not more than five years, fined, or both, if such person:

(1) "in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry" (18 U.S.C. § 1001);

(2) "in any . . . statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true" (18 U.S.C. § 1621); or

(3) "in any (. . . statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information . . . knowing the same to contain any false material declaration." (18 U.S.C. § 1623)

For a felony conviction under the provisions cited above, federal law provides that the fine may be not more than the greater of (i) $250,000 for an individual or $500,000 for a corporation, or (ii) if the felony results in pecuniary gain to any person or pecuniary loss to any person other than the defendant, the greater of twice the gross gain or twice the gross loss. 18 U.S.C. § 3571.

## **BACKGROUND INFORMATION**

**Item 1.** **General Information**

Corporation's Full Name _____

Primary Business Address _____ From (Date) _____

Telephone No. _____ Fax No. _____

E-Mail Address_____ Internet Home Page_____

All other current addresses & previous addresses for past five years, including post office boxes and mail drops:

Address_____ From/Until_____

Address_____ From/Until_____

Address_____ From/Until_____

All predecessor companies for past five years:

Name & Address _____ From/Until _____

Name & Address _____ From/Until _____

Name & Address _____ From/Until _____

**Item 2.** **Legal Information**

Federal Taxpayer ID No. _____ State & Date of Incorporation _____

State Tax ID No. _____ State _____ Profit or Not For Profit _____

Corporation's Present Status: Active _____ Inactive _____ Dissolved _____

If Dissolved: Date dissolved _____ By Whom _____

Reasons _____

Fiscal Year-End (Mo./Day) _____ Corporation's Business Activities _____

**Item 3.** **Registered Agent**

Name of Registered Agent _____

Address _____ Telephone No. _____

Initials _____

**Item 4.**        **Principal Stockholders**

List all persons and entities that own at least 5% of the corporation's stock.

| Name & Address | % Owned |
|---|---|
| | |
| | |
| | |
| | |

**Item 5.**        **Board Members**

List all members of the corporation's Board of Directors.

| Name & Address | % Owned | Term (From/Until) |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

**Item 6.**        **Officers**

List all of the corporation's officers, including *de facto* officers (individuals with significant management responsibility whose titles do not reflect the nature of their positions).

| Name & Address | % Owned |
|---|---|
| | |
| | |
| | |
| | |
| | |

Initials _____

**Item 7.**     **Businesses Related to the Corporation**

List all corporations, partnerships, and other business entities in which this corporation has an ownership interest.

| Name & Address | Business Activities | % Owned |
|---|---|---|
| | | |
| | | |
| | | |

State which of these businesses, if any, has ever transacted business with the corporation _____

---

**Item 8.**     **Businesses Related to Individuals**

List all corporations, partnerships, and other business entities in which the corporation's principal stockholders, board members, or officers (i.e., the individuals listed in Items 4 - 6 above) have an ownership interest.

| Individual's Name | Business Name & Address | Business Activities | % Owned |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

State which of these businesses, if any, have ever transacted business with the corporation _____

---

**Item 9.**     **Related Individuals**

List all related individuals with whom the corporation has had any business transactions during the three previous fiscal years and current fiscal year-to-date. A "related individual" is a spouse, sibling, parent, or child of the principal stockholders, board members, and officers (i.e., the individuals listed in Items 4 - 6 above).

| Name and Address | Relationship | Business Activities |
|---|---|---|
| | | |
| | | |
| | | |

Page 4

Initials _____

**Item 10.**     **Outside Accountants**

List all outside accountants retained by the corporation during the last three years.

| Name | Firm Name | Address | CPA/PA? |
|------|-----------|---------|---------|
|      |           |         |         |
|      |           |         |         |
|      |           |         |         |
|      |           |         |         |
|      |           |         |         |

**Item 11.**     **Corporation's Recordkeeping**

List all individuals within the corporation with responsibility for keeping the corporation's financial books and records for the last three years.

| Name, Address, & Telephone Number | Position(s) Held |
|-----------------------------------|------------------|
|                                   |                  |
|                                   |                  |
|                                   |                  |
|                                   |                  |

**Item 12.**     **Attorneys**

List all attorneys retained by the corporation during the last three years.

| Name | Firm Name | Address |
|------|-----------|---------|
|      |           |         |
|      |           |         |
|      |           |         |
|      |           |         |
|      |           |         |

Page 5                                                          Initials _____

**Item 13.** **Pending Lawsuits Filed by the Corporation**

List all pending lawsuits that have been filed by the corporation in court or before an administrative agency. (List lawsuits that resulted in final judgments or settlements in favor of the corporation in Item 25).

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Page 6                                                           Initials _____

## Item 14.     Current Lawsuits Filed Against the Corporation

List all pending lawsuits that have been filed against the corporation in court or before an administrative agency. (List lawsuits that resulted in final judgments, settlements, or orders in Items 26 - 27).

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

**Item 15.**     **Bankruptcy Information**

List all state insolvency and federal bankruptcy proceedings involving the corporation.

Commencement Date _____ Termination Date _____ Docket No. _____

If State Court: Court & County _____ If Federal Court: District _____

Disposition _____

**Item 16.**     **Safe Deposit Boxes**

List all safe deposit boxes, located within the United States or elsewhere, held by the corporation, or held by others for the benefit of the corporation. *On a separate page, describe the contents of each box.*

| Owner's Name | Name & Address of Depository Institution | Box No. |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

## FINANCIAL INFORMATION

**REMINDER: When an Item asks for information about assets or liabilities "held by the corporation," include ALL such assets and liabilities, located within the United States or elsewhere, held by the corporation or held by others for the benefit of the corporation.**

**Item 17.**     **Tax Returns**

List all federal and state corporate tax returns filed for the last three complete fiscal years. *Attach copies of all returns.*

| Federal/ State/Both | Tax Year | Tax Due Federal | Tax Paid Federal | Tax Due State | Tax Paid State | Preparer's Name |
|---|---|---|---|---|---|---|
| | | $ | $ | $ | $ | |
| | | $ | $ | $ | $ | |
| | | $ | $ | $ | $ | |

Initials _____

**Item 18.**      **Financial Statements**

List all financial statements that were prepared for the corporation's last three complete fiscal years and for the current fiscal year-to-date. *Attach copies of all statements, providing audited statements if available.*

| Year | Balance Sheet | Profit & Loss Statement | Cash Flow Statement | Changes in Owner's Equity | Audited? |
|------|---------------|-------------------------|---------------------|---------------------------|----------|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

**Item 19.**      **Financial Summary**

For each of the last three complete fiscal years and for the current fiscal year-to-date for which the corporation has not provided a profit and loss statement in accordance with Item 18 above, provide the following summary financial information.

| | Current Year-to-Date | 1 Year Ago | 2 Years Ago | 3 Years Ago |
|---|---|---|---|---|
| Gross Revenue | $ | $ | $ | $ |
| Expenses | $ | $ | $ | $ |
| Net Profit After Taxes | $ | $ | $ | $ |
| Payables | $ | | | |
| Receivables | $ | | | |

**Item 20.**      **Cash, Bank, and Money Market Accounts**

List cash and all bank and money market accounts, including but not limited to, checking accounts, savings accounts, and certificates of deposit, held by the corporation. The term "cash" includes currency and uncashed checks.

Cash on Hand $_____ Cash Held for the Corporation's Benefit $_____

| Name & Address of Financial Institution | Signator(s) on Account | Account No. | Current Balance |
|---|---|---|---|
|  |  |  | $ |
|  |  |  | $ |
|  |  |  | $ |
|  |  |  | $ |

Initials _____

**Item 21.**     **Government Obligations and Publicly Traded Securities**

List all U.S. Government obligations, including but not limited to, savings bonds, treasury bills, or treasury notes, held by the corporation.  Also list all publicly traded securities, including but not limited to, stocks, stock options, registered and bearer bonds, state and municipal bonds, and mutual funds, held by the corporation.

Issuer _____ Type of Security/Obligation _____

No. of Units Owned _____ Current Fair Market Value $_____ Maturity Date _____

Issuer _____ Type of Security/Obligation _____

No. of Units Owned _____ Current Fair Market Value $_____ Maturity Date _____

**Item 22.**     **Real Estate**

List all real estate, including leaseholds in excess of five years, held by the corporation.

Type of Property_____ Property's Location_____

Name(s) on Title and Ownership Percentages_____

Current Value $_____ Loan or Account No. _____

Lender's Name and Address_____

Current Balance On First Mortgage $_____ Monthly Payment $_____

Other Loan(s) (describe)_____ Current Balance $_____

Monthly Payment $_____ Rental Unit?_____ Monthly Rent Received $_____

Type of Property_____ Property's Location_____

Name(s) on Title and Ownership Percentages_____

Current Value $_____ Loan or Account No. _____

Lender's Name and Address_____

Current Balance On First Mortgage $_____ Monthly Payment $_____

Other Loan(s) (describe)_____ Current Balance $_____

Monthly Payment $_____ Rental Unit?_____ Monthly Rent Received $_____

## Item 23.    Other Assets

List all other property, by category, with an estimated value of $2,500 or more, held by the corporation, including but not limited to, inventory, machinery, equipment, furniture, vehicles, customer lists, computer software, patents, and other intellectual property.

| Property Category | Property Location | Acquisition Cost | Current Value |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

## Item 24.    Trusts and Escrows

List all persons and other entities holding funds or other assets that are in escrow or in trust for the corporation.

| Trustee or Escrow Agent's Name & Address | Description and Location of Assets | Present Market Value of Assets |
|---|---|---|
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |

Page 11                                                                 Initials _____

**Item 25.**      **Monetary Judgments and Settlements Owed To the Corporation**

List all monetary judgments and settlements, recorded and unrecorded, owed to the corporation.

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____


**Item 26.**      **Monetary Judgments and Settlements Owed By the Corporation**

List all monetary judgments and settlements, recorded and unrecorded, owed by the corporation.

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date_____ Amount $_____

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____

Initials _____

**Item 27.**     **Government Orders and Settlements**

List all existing orders and settlements between the corporation and any federal or state government entities.

Name of Agency _____ Contact Person _____

Address _____ Telephone No. _____

Agreement Date _____ Nature of Agreement _____

**Item 28.**     **Credit Cards**

List all of the corporation's credit cards and store charge accounts and the individuals authorized to use them.

| <u>Name of Credit Card or Store</u> | <u>Names of Authorized Users and Positions Held</u> |
|---|---|
| | |
| | |
| | |
| | |
| | |

**Item 29.**     **Compensation of Employees**

List all compensation and other benefits received from the corporation by the five most highly compensated employees, independent contractors, and consultants (other than those individuals listed in Items 5 and 6 above), for the two previous fiscal years and current fiscal year-to-date. "Compensation" includes, but is not limited to, salaries, commissions, consulting fees, bonuses, dividends, distributions, royalties, pensions, and profit sharing plans. "Other benefits" include, but are not limited to, loans, loan payments, rent, car payments, and insurance premiums, whether paid directly to the individuals, or paid to others on their behalf.

| <u>Name/Position</u> | <u>Current Fiscal Year-to-Date</u> | <u>1 Year Ago</u> | <u>2 Years Ago</u> | <u>Compensation or Type of Benefits</u> |
|---|---|---|---|---|
| | $ | $ | $ | |
| | $ | $ | $ | |
| | $ | $ | $ | |
| | $ | $ | $ | |
| | $ | $ | $ | |

Page 13     Initials _____

**Item 30.** **Compensation of Board Members and Officers**

List all compensation and other benefits received from the corporation by each person listed in Items 5 and 6, for the current fiscal year-to-date and the two previous fiscal years. "Compensation" includes, but is not limited to, salaries, commissions, consulting fees, dividends, distributions, royalties, pensions, and profit sharing plans. "Other benefits" include, but are not limited to, loans, loan payments, rent, car payments, and insurance premiums, whether paid directly to the individuals, or paid to others on their behalf.

| Name/Position | Current Fiscal Year-to-Date | 1 Year Ago | 2 Years Ago | Compensation or Type of Benefits |
|---|---|---|---|---|
| | $ | $ | $ | |
| | $ | $ | $ | |
| | $ | $ | $ | |
| | $ | $ | $ | |
| | $ | $ | $ | |
| | $ | $ | $ | |
| | $ | $ | $ | |
| | $ | $ | $ | |

**Item 31.** **Transfers of Assets Including Cash and Property**

List all transfers of assets over $2,500 made by the corporation, other than in the ordinary course of business, during the previous three years, by loan, gift, sale, or other transfer.

| Transferee's Name, Address, & Relationship | Property Transferred | Aggregate Value | Transfer Date | Type of Transfer (e.g., Loan, Gift) |
|---|---|---|---|---|
| | | $ | | |
| | | $ | | |
| | | $ | | |
| | | $ | | |
| | | $ | | |

Page 14                                                                 Initials _____

<u>**Item 32.**</u>　　　**Documents Attached to the Financial Statement**

List all documents that are being submitted with the financial statement.

<u>Item No. Document<br>Relates To</u>　　　<u>Description of Document</u>

_____　　_____

_____　　_____

_____　　_____

_____　　_____

_____　　_____

_____　　_____

_____　　_____

_____　　_____

_____　　_____


　　　I am submitting this financial statement with the understanding that it may affect action by the Federal Trade Commission or a federal court. I have used my best efforts to obtain the information requested in this statement. The responses I have provided to the items above are true and contain all the requested facts and information of which I have notice or knowledge. I have provided all requested documents in my custody, possession, or control. I know of the penalties for false statements under <u>18 U.S.C. § 1001</u>, <u>18 U.S.C. § 1621</u>, and <u>18 U.S.C. § 1623</u> (five years imprisonment and/or fines). I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on:

_____　　　_____
(Date)　　　　　　　　　　　　　　　　　Signature

　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　Corporate Position

# Attachment C

Form **4506**

(Novmeber 2021)

Department of the Treasury
Internal Revenue Service

# Request for Copy of Tax Return

▶ **Do not sign this form unless all applicable lines have been completed.**

▶ **Request may be rejected if the form is incomplete or illegible.**

▶ **For more information about Form 4506, visit** *www.irs.gov/form4506.*

OMB No. 1545-0429

**Tip: Get faster service:** Online at www.irs.gov, **Get Your Tax Record** (Get Transcript) or by calling **1-800-908-9946** for specialized assistance. We have teams available to assist. **Note:** Taxpayers may register to use Get Transcript to view, print, or download the following transcript types: **Tax Return Transcript** (shows most line items including Adjusted Gross Income (AGI) from your original Form 1040-series tax return as filed, along with any forms and schedules), **Tax Account Transcript** (shows basic data such as return type, marital status, AGI, taxable income and all payment types), **Record of Account Transcript** (combines the tax return and tax account transcripts into one complete transcript), **Wage and Income Transcript** (shows data from information returns we receive such as Forms W-2, 1099, 1098 and Form 5498), and **Verification of Non-filing Letter** (provides proof that the IRS has no record of a filed Form 1040-series tax return for the year you request).

| **1a** Name shown on tax return. If a joint return, enter the name shown first. | **1b** First social security number on tax return, individual taxpayer identification number, or employer identification number (see instructions) |
|---|---|
| **2a** If a joint return, enter spouse's name shown on tax return. | **2b** Second social security number or individual taxpayer identification number if joint tax return |

**3** Current name, address (including apt., room, or suite no.), city, state, and ZIP code (see instructions)

**4** Previous address shown on the last return filed if different from line 3 (see instructions)

**5** If the tax return is to be mailed to a third party (such as a mortgage company), enter the third party's name, address, and telephone number.

**Caution:** If the tax return is being sent to the third party, ensure that lines 5 through 7 are completed before signing. (see instructions).

**6** **Tax return requested.** Form 1040, 1120, 941, etc. and all attachments as originally submitted to the IRS, including Form(s) W-2, schedules, or amended returns. Copies of Forms 1040, 1040A, and 1040EZ are generally available for 7 years from filing before they are destroyed by law. Other returns may be available for a longer period of time. Enter only one return number. If you need more than one type of return, you must complete another Form 4506. _____

**Note:** If the copies must be certified for court or administrative proceedings, check here . . . . . . . . . . ☐

**7** **Year or period requested.** Enter the ending date of the tax year or period using the mm/dd/yyyy format (see instructions).

_____ / _____ / _____     _____ / _____ / _____     _____ / _____ / _____     _____ / _____ / _____

_____ / _____ / _____     _____ / _____ / _____     _____ / _____ / _____     _____ / _____ / _____

**8** **Fee.** There is a $43 fee for each return requested. **Full payment must be included with your request or it will be rejected. Make your check or money order payable to "United States Treasury." Enter your SSN, ITIN, or EIN and "Form 4506 request" on your check or money order.**

**a** Cost for each return . . . . . . . . . . . . . . . . . . . . . . . . .   $   43.00

**b** Number of returns requested on line 7 . . . . . . . . . . . . . . . . . .

**c** Total cost. Multiply line 8a by line 8b . . . . . . . . . . . . . . . . . .   $

**9** If we cannot find the tax return, we will refund the fee. If the refund should go to the third party listed on line 5, check here . . . . . ☐

**Caution:** Do not sign this form unless all applicable lines have been completed.

**Signature of taxpayer(s).** I declare that I am either the taxpayer whose name is shown on line 1a or 2a, or a person authorized to obtain the tax return requested. If the request applies to a joint return, at least one spouse must sign. If signed by a corporate officer, 1 percent or more shareholder, partner, managing member, guardian, tax matters partner, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute Form 4506 on behalf of the taxpayer. **Note:** This form must be received by IRS within 120 days of the signature date.

☐ **Signatory attests that he/she has read the attestation clause and upon so reading declares that he/she has the authority to sign the Form 4506. See instructions.**

Phone number of taxpayer on line 1a or 2a

**Sign Here**

▶ Signature (see instructions)          Date

▶ Print/Type name          Title (if line 1a above is a corporation, partnership, estate, or trust)

▶ Spouse's signature          Date

▶ Print/Type name

**For Privacy Act and Paperwork Reduction Act Notice, see page 2.**          Cat. No. 41721E          Form **4506** (Rev. 11-2021)

Case 3:22-cv-00487-TJC-MCR   Document 12-1   Filed 05/03/22   Page 31 of 33 PageID 336
Case 2:22-mc-00154-KJM-AC   Document 1   Filed 05/12/22   Page 138 of 154

Form 4506 (Rev. 11-2021)                                                                                 Page **2**

Section references are to the Internal Revenue Code unless otherwise noted.

## Future Developments

For the latest information about Form 4506 and its instructions, go to *www.irs.gov/form4506*.

## General Instructions

**Caution:** Do not sign this form unless all applicable lines, *including lines 5 through 7*, have been completed.

**Designated Recipient Notification.** Internal Revenue Code, Section 6103(c), limits disclosure and use of return information received pursuant to the taxpayer's consent and holds the recipient subject to penalties for any unauthorized access, other use, or redisclosure without the taxpayer's express permission or request.

**Taxpayer Notification.** Internal Revenue Code, Section 6103(c), limits disclosure and use of return information provided pursuant to your consent and holds the recipient subject to penalties, brought by private right of action, for any unauthorized access, other use, or redisclosure without your express permission or request.

**Purpose of form.** Use Form 4506 to request a copy of your tax return. You can also designate (on line 5) a third party to receive the tax return.

**How long will it take?** It may take up to 75 calendar days for us to process your request.

**Where to file.** Attach payment and mail Form 4506 to the address below for the state you lived in, or the state your business was in, when that return was filed. There are two address charts: one for individual returns (Form 1040 series) and one for all other returns.

If you are requesting a return for more than one year or period and the chart below shows two different addresses, send your request based on the address of your most recent return.

### Chart for individual returns (Form 1040 series)

| If you filed an individual return and lived in: | Mail to: |
|---|---|
| Florida, Louisiana, Mississippi, Texas, a foreign country, American Samoa, Puerto Rico, Guam, the Commonwealth of the Northern Mariana Islands, the U.S. Virgin Islands, or A.P.O. or F.P.O. address | Internal Revenue Service RAIVS Team Stop 6716 AUSC Austin, TX 73301 |
| Alabama, Arkansas, Delaware, Georgia, Illinois, Indiana, Iowa, Kentucky, Maine, Massachusetts, Minnesota, Missouri, New Hampshire, New Jersey, New York, North Carolina, Oklahoma, South Carolina, Tennessee, Vermont, Virginia, Wisconsin | Internal Revenue Service RAIVS Team Stop 6705 S-2 Kansas City, MO 64999 |
| Alaska, Arizona, California, Colorado, Connecticut, District of Columbia, Hawaii, Idaho, Kansas, Maryland, Michigan, Montana, Nebraska, Nevada, New Mexico, North Dakota, Ohio, Oregon, Pennsylvania, Rhode Island, South Dakota, Utah, Washington, West Virginia, Wyoming | Internal Revenue Service RAIVS Team P.O. Box 9941 Mail Stop 6734 Ogden, UT 84409 |

### Chart for all other returns

| For returns not in Form 1040 series, if the address on the return was in: | Mail to: |
|---|---|
| Connecticut, Delaware, District of Columbia, Georgia, Illinois, Indiana, Kentucky, Maine, Maryland, Massachusetts, Michigan, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Tennessee, Vermont, Virginia, West Virginia, Wisconsin | Internal Revenue Service RAIVS Team Stop 6705 S-2 Kansas City, MO 64999 |
| Alabama, Alaska, Arizona, Arkansas, California, Colorado, Florida, Hawaii, Idaho, Iowa, Kansas, Louisiana, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Texas, Utah, Washington, Wyoming, a foreign country, American Samoa, Puerto Rico, Guam, the Commonwealth of the Northern Mariana Islands, the U.S. Virgin Islands, or A.P.O. or F.P.O. address | Internal Revenue Service RAIVS Team P.O. Box 9941 Mail Stop 6734 Ogden, UT 84409 |

## Specific Instructions

**Line 1b.** Enter the social security number (SSN) or individual taxpayer identification number (ITIN) for the individual listed on line 1a, or enter the employer identification number (EIN) for the business listed on line 1a. For example, if you are requesting Form 1040 that includes Schedule C (Form 1040), enter your SSN.

**Line 3.** Enter your current address. If you use a P.O. box, please include it on this line 3.

**Line 4.** Enter the address shown on the last return filed if different from the address entered on line 3.

**Note.** If the addresses on lines 3 and 4 are different and you have not changed your address with the IRS, file Form 8822, Change of Address, or Form 8822-B,Change of Address or Responsible Party — Business, with Form 4506.

**Line 7.** Enter the end date of the tax year or period requested in mm/dd/yyyy format. This may be a calendar year, fiscal year or quarter. Enter each quarter requested for quarterly returns. Example: Enter 12/31/2018 for a calendar year 2018 Form 1040 return, or 03/31/2017 for a first quarter Form 941 return.

**Signature and date.** Form 4506 must be signed and dated by the taxpayer listed on line 1a or 2a. The IRS must receive Form 4506 within 120 days of the date signed by the taxpayer or it will be rejected. Ensure that all applicable lines, *including lines 5 through 7*, are completed before signing.



*You must check the box in the signature area to acknowledge you have the authority to sign and request the information. The form will not be processed and returned to you if the box is unchecked.*

*Individuals.* Copies of jointly filed tax returns may be furnished to either spouse. Only one signature is required. Sign Form 4506 exactly as your name appeared on the original return. If you changed your name, also sign your current name.

*Corporations.* Generally, Form 4506 can be signed by: (1) an officer having legal authority to bind the corporation, (2) any person designated by the board of directors or other governing body, or (3) any officer or employee on written request by any principal officer and attested to by the secretary or other officer. A bona fide shareholder of record owning 1 percent or more of the outstanding stock of the corporation may submit a Form 4506 but must provide documentation to support the requester's right to receive the information.

*Partnerships.* Generally, Form 4506 can be signed by any person who was a member of the partnership during any part of the tax period requested on line 7.

*All others.* See section 6103(e) if the taxpayer has died, is insolvent, is a dissolved corporation, or if a trustee, guardian, executor, receiver, or administrator is acting for the taxpayer.

**Note:** If you are Heir at law, Next of kin, or Beneficiary you must be able to establish a material interest in the estate or trust.

**Documentation.** For entities other than individuals, you must attach the authorization document. For example, this could be the letter from the principal officer authorizing an employee of the corporation or the letters testamentary authorizing an individual to act for an estate.

**Signature by a representative.** A representative can sign Form 4506 for a taxpayer only if this authority has been specifically delegated to the representative on Form 2848, line 5a. Form 2848 showing the delegation must be attached to Form 4506.

**Privacy Act and Paperwork Reduction Act Notice.** We ask for the information on this form to establish your right to gain access to the requested return(s) under the Internal Revenue Code. We need this information to properly identify the return(s) and respond to your request. If you request a copy of a tax return, sections 6103 and 6109 require you to provide this information, including your SSN or EIN, to process your request. If you do not provide this information, we may not be able to process your request. Providing false or fraudulent information may subject you to penalties.

Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation, and cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their tax laws. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file Form 4506 will vary depending on individual circumstances. The estimated average time is: **Learning about the law or the form,** 10 min.; **Preparing the form,** 16 min.; and **Copying, assembling, and sending the form to the IRS,** 20 min.

If you have comments concerning the accuracy of these time estimates or suggestions for making Form 4506 simpler, we would be happy to hear from you. You can write to:

Internal Revenue Service
Tax Forms and Publications Division
1111 Constitution Ave. NW, IR-6526
Washington, DC 20224.

Do not send the form to this address. Instead, see *Where to file* on this page.

# Attachment D

## CONSENT TO RELEASE FINANCIAL RECORDS

I, _____ of _____, (City,
State), do hereby direct any bank, saving and loan association, credit union,
depository institution, finance company, commercial lending company, credit card
processor, credit card processing entity, automated clearing house, network
transaction processor, bank debit processing entity, brokerage house, escrow agent,
money market or mutual fund, title company, commodity trading company, trustee,
or person that holds, controls, or maintains custody of assets, wherever located,
that are owned or controlled by me or at which there is an account of any kind
upon which I am authorized to draw, and its officers, employees, and agents, to
disclose all information and deliver copies of all documents of every nature in its
possession or control which relate to the said accounts to any attorney of the
Federal Trade Commission, and to give evidence relevant thereto, in the matter of [
], now pending in the United States District Court of [          ], and this shall be
irrevocable authority for so doing.

This direction is intended to apply to the laws of countries other than the
United States of America which restrict or prohibit disclosure of bank or other
financial information without the consent of the holder of the account, and shall be
construed as consent with respect hereto, and the same shall apply to any of the
accounts for which I may be a relevant principal.

Dated:_____        Signature:_____

                             Printed Name:_____

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. _____ |
| Plaintiff, | **COMPLAINT FOR** |
| | **PERMANENT INJUNCTION,** |
| v. | **MONETARY RELIEF, AND** |
| | **OTHER RELIEF** |
| MICHAEL RANDO, a/k/a Mike Singles, individually and as a principal of Prosperity Training Technology LLC, Elite Customer Services, LLC, Digital Business Scaling LLC, First Coast Matchmakers Inc., First Coast Matchmakers LLC, and Financial Consulting Management Group LLC, | **(DOCUMENT SUBMITTED UNDER SEAL)** |
| VALERIE RANDO, a/k/a Valerie Payton, Val Rando, and Val Singles, individually and as a principal of Prosperity Training Technology LLC, Elite Customer Services, LLC, Digital Business Scaling LLC, First Coast Matchmakers Inc., First Coast Matchmakers LLC, and Financial Consulting Management Group LLC, | |
| PROSPERITY TRAINING TECHNOLOGY LLC, a Florida limited liability company, also d/b/a The Credit Game, The Credit Game University, and Elite Deletions, | |
| ELITE CUSTOMER SERVICES, LLC, a Florida limited liability company, | |
| DIGITAL BUSINESS SCALING LLC, a Florida limited liability company, | |
| FIRST COAST MATCHMAKERS INC., a Florida corporation, also d/b/a Wholesale Tradelines, | |

FIRST COAST MATCHMAKERS LLC, a
Florida limited liability company, also
d/b/a Wholesale Tradelines,

FINANCIAL CONSULTING
MANAGEMENT GROUP LLC, a Florida
limited liability company, and

RESOURCE MANAGEMENT
INVESTMENTS, LLC, a Florida limited
liability company,

　　　　Defendants.

2

## U.S. District Court
## Middle District of Florida (Jacksonville)
## CIVIL DOCKET FOR CASE #: 3:22-cv-00487-TJC-MCR

Federal Trade Commission v. Rando et al                    Date Filed: 05/02/2022
Assigned to: Judge Timothy J. Corrigan                     Jury Demand: None
Referred to: Magistrate Judge Monte C. Richardson          Nature of Suit: 890 Other Statutory Actions
Cause: 15:0052 Federal Trade Commission Act                Jurisdiction: U.S. Government Plaintiff

**Plaintiff**

**Federal Trade Commission**              represented by   **Brian Martin Welke**
                                                           Federal Trade Commission
                                                           600 Pennsylvania Ave., NW
                                                           Ste Mail Drop CC-9528
                                                           Washington, DC 20580
                                                           202-326-2897
                                                           Email: bwelke@ftc.gov
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Hong Park**
                                                           Federal Trade Commission
                                                           600 Pennsylvania Ave., NW
                                                           Mail Drop CC-9528
                                                           Washington, DC 20580
                                                           202-326-2158
                                                           Email: hpark@ftc.gov
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Sana Chaudhry**
                                                           Federal Trade Commission
                                                           600 Pennsylvania Ave NW, CC 9528
                                                           Washington, DC 20580
                                                           202-326-2679
                                                           Email: schaudhry@ftc.gov
                                                           *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Michael Rando**                         represented by   **Latour Rey Lafferty**
*individually and as a principal of Prosperity*           Holland & Knight LLP
*Training Technology LLC, Elite Customer*                 100 N Tampa St Ste 4100
*Services, LLC, Digital Business Scaling*                 Tampa, FL 33602
*LLC, First Coast Matchmakers Inc., First*               813/227-6361
*Coast Matchmakers LLC, and Financial*                   Fax: 813/229-0134
*Consulting Management Group LLC*                        Email: ltlafferty@gunster.com
*also known as*                                          *LEAD ATTORNEY*
Mike Singles                                             *ATTORNEY TO BE NOTICED*

**Ashley Englund**
1 Independent Drive
Suite 2300
Jacksonville, FL 32202
603-548-3450
Email: aenglund@gunster.com
*ATTORNEY TO BE NOTICED*

**Michael R. Freed**
Gunster, Yoakley & Stewart, PA
225 Water St Ste 1750
Jacksonville, FL 32202-5137
904/350-7167
Fax: 904/354-2170
Email: mfreed@gunster.com
*ATTORNEY TO BE NOTICED*

**Nathan W. Hill**
Gunster Yoakley and Stewart
200 S. Orange Ave., Ste. 1400
Orlando, FL 32801
407-406-5246
Email: nhill@gunster.com
*ATTORNEY TO BE NOTICED*

**Pierce Giboney**
Gunster Yoakley & Stewart, P.A.
1 Independent Drive
Suite 2300
Jacksonville, FL 32202
904-354-1980
Fax: 904-354-2170
Email: pgiboney@gunster.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Valerie Rando**
*individually and as a principal of Prosperity
Training Technology LLC, Elite Customer
Services, LLC, Digital Business Scaling
LLC, First Coast Matchmakers Inc., First
Coast Matchmakers LLC, and Financial
Consulting Management Group LLC
also known as*
Valerie Payton

represented by **Latour Rey Lafferty**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ashley Englund**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael R. Freed**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nathan W. Hill**
(See above for address)
*ATTORNEY TO BE NOTICED*

# U.S. District Court
# Middle District of Florida (Jacksonville)
# CIVIL DOCKET FOR CASE #: 3:22-cv-00487-TJC-MCR

Federal Trade Commission v. Rando et al
Assigned to: Judge Timothy J. Corrigan
Referred to: Magistrate Judge Monte C. Richardson
Cause: 15:0052 Federal Trade Commission Act

Date Filed: 05/02/2022
Jury Demand: None
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: U.S. Government Plaintiff

## Plaintiff

**Federal Trade Commission**

represented by **Brian Martin Welke**
Federal Trade Commission
600 Pennsylvania Ave., NW
Ste Mail Drop CC-9528
Washington, DC 20580
202-326-2897
Email: bwelke@ftc.gov
*ATTORNEY TO BE NOTICED*

**Hong Park**
Federal Trade Commission
600 Pennsylvania Ave., NW
Mail Drop CC-9528
Washington, DC 20580
202-326-2158
Email: hpark@ftc.gov
*ATTORNEY TO BE NOTICED*

**Sana Chaudhry**
Federal Trade Commission
600 Pennsylvania Ave NW, CC 9528
Washington, DC 20580
202-326-2679
Email: schaudhry@ftc.gov
*ATTORNEY TO BE NOTICED*

V.

## Defendant

**Michael Rando**
*individually and as a principal of Prosperity Training Technology LLC, Elite Customer Services, LLC, Digital Business Scaling LLC, First Coast Matchmakers Inc., First Coast Matchmakers LLC, and Financial Consulting Management Group LLC*
*also known as*
Mike Singles

represented by **Latour Rey Lafferty**
Holland & Knight LLP
100 N Tampa St Ste 4100
Tampa, FL 33602
813/227-6361
Fax: 813/229-0134
Email: ltlafferty@gunster.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ashley Englund**
1 Independent Drive
Suite 2300
Jacksonville, FL 32202
603-548-3450
Email: aenglund@gunster.com
*ATTORNEY TO BE NOTICED*

**Michael R. Freed**
Gunster, Yoakley & Stewart, PA
225 Water St Ste 1750
Jacksonville, FL 32202-5137
904/350-7167
Fax: 904/354-2170
Email: mfreed@gunster.com
*ATTORNEY TO BE NOTICED*

**Nathan W. Hill**
Gunster Yoakley and Stewart
200 S. Orange Ave., Ste. 1400
Orlando, FL 32801
407-406-5246
Email: nhill@gunster.com
*ATTORNEY TO BE NOTICED*

**Pierce Giboney**
Gunster Yoakley & Stewart, P.A.
1 Independent Drive
Suite 2300
Jacksonville, FL 32202
904-354-1980
Fax: 904-354-2170
Email: pgiboney@gunster.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Valerie Rando**
*individually and as a principal of Prosperity Training Technology LLC, Elite Customer Services, LLC, Digital Business Scaling LLC, First Coast Matchmakers Inc., First Coast Matchmakers LLC, and Financial Consulting Management Group LLC*
*also known as*
Valerie Payton

represented by **Latour Rey Lafferty**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ashley Englund**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael R. Freed**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nathan W. Hill**
(See above for address)
*ATTORNEY TO BE NOTICED*

Pierce Giboney
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Prosperity Training Technology LLC**
*a Florida limited liability company*
*doing business as*
The Credit Game, The Credit Game
University, and Elite Deletions

represented by **Latour Rey Lafferty**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ashley Englund**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael R. Freed**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nathan W. Hill**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Pierce Giboney**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Elite Customer Services, LLC**
*a Florida limited liability company*

represented by **Latour Rey Lafferty**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ashley Englund**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael R. Freed**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nathan W. Hill**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Pierce Giboney**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Digital Business Scaling LLC**
*a Florida limited liability company*

represented by **Latour Rey Lafferty**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ashley Englund**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael R. Freed**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nathan W. Hill**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Pierce Giboney**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**First Coast Matchmakers Inc.**
*a Florida corporation*
*doing business as*
Wholesale Tradelines

represented by **Latour Rey Lafferty**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ashley Englund**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael R. Freed**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nathan W. Hill**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Pierce Giboney**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**First Coast Matchmakers LLC**
*a Florida limited liability company*
*doing business as*
Wholesale Tradelines

represented by **Latour Rey Lafferty**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ashley Englund**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael R. Freed**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nathan W. Hill**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Pierce Giboney**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Financial Consulting Management Group LLC**
*a Florida limited liability company*

represented by **Latour Rey Lafferty**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ashley Englund**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael R. Freed**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nathan W. Hill**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Pierce Giboney**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Resource Management Investments, LLC**
*a Florida limited liability company*

represented by **Latour Rey Lafferty**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ashley Englund**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael R. Freed**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nathan W. Hill**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Pierce Giboney**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Receiver**

**Maria Yip**

represented by **Katherine C. Donlon**

Johnson, Cassidy, Newlon & DeCort
2802 N. Howard Avenue
Tampa, FL 33607
813-291-3300
Fax: 813-324-4629
Email: kdonlon@jclaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/02/2022 | 1 | COMPLAINT against All Defendants filed by Federal Trade Commission. (Attachments: # 1 Civil Cover Sheet)(AEP) (Entered: 05/02/2022) |
| 05/02/2022 | 2 | EX PARTE MOTION to Temporarily Seal Entire Case File and Docket by Federal Trade Commission. (AEP) (Entered: 05/02/2022) |
| 05/02/2022 | 3 | **ORDER granting 2 Motion to Temporarily Seal Entire Case File and Docket. Signed by Judge Timothy J. Corrigan on 5/2/2022. (AEP)** (Entered: 05/02/2022) |
| 05/02/2022 | 4 | EX PARTE MOTION for Temporary Restraining Order with Asset Freeze, Immediate Access to Documents and Premises, and Appointment of a Receiver with Order to Show Cause Why the Court Should not Issue a Preliminary Injunction by Federal Trade Commission. (Attachments: # 1 Exhibit, # 2 Text of Proposed Order, # 3 Exhibit Attachment for Proposed Order)(AEP) (Entered: 05/02/2022) |
| 05/02/2022 | 5 | EX PARTE MOTION for Leave to Exceed Page Limit by Federal Trade Commission. (AEP) (Entered: 05/02/2022) |
| 05/02/2022 | 6 | EX PARTE MOTION to file a USB Drive Containing Video Files by Federal Trade Commission. (AEP) (Entered: 05/02/2022) |
| 05/02/2022 | 7 | DECLARATION and Certification of Plaintiff's Counsel pursuant to Fed. R. Civ. P. 65(b) in support of Plaintiff's Ex Parte Motions for Temporary Restraining Order and to Temporarily Seal Entire Case File and Docket by Federal Trade Commission. (AEP) (Entered: 05/02/2022) |
| 05/02/2022 | 8 | EX PARTE Recommendation for Temporary Receiver by Federal Trade Commission (Attachments: # 1 Exhibit A)(AEP) (Entered: 05/02/2022) |
| 05/02/2022 | 9 | **ENDORSED ORDER granting 5 Plaintiff's Ex Parte Motion for Leave to Exceed Page Limit and 6 Plaintiff's Ex Parte Motion to File a USB Drive Containing Video Files. The Court has 4 Plaintiff's Ex Parte Motion for Temporary Restraining Order under active review. Signed by Judge Timothy J. Corrigan on 5/2/2022. (CKM)** (Entered: 05/02/2022) |
| 05/02/2022 | 10 | SUMMONS issued as to Digital Business Scaling LLC, Elite Customer Services, LLC, Financial Consulting Management Group LLC, First Coast Matchmakers Inc., First Coast Matchmakers LLC, Prosperity Training Technology LLC, Michael Rando, Valerie Rando, Resource Management Investments, LLC. (AEP) (Entered: 05/02/2022) |
| 05/02/2022 | 11 | NOTICE to counsel Hong Park, Brian M. Welke, Sana Chaudhry of Local Rule 2.01(b)(1)(G), which requires members of the Middle District bar to register with the Middle District CM/ECF system by submitting an e-file registration through PACER. (Signed by Deputy Clerk). (AEP) (Entered: 05/02/2022) |
| 05/03/2022 | 12 | **ORDER granting 4 Plaintiff's Ex Parte Motion for Temporary Restraining Order with Asset Freeze, Immediate Access to Documents and Premises, and Appointment** |

|  |  | of a Receiver with Order to Show Cause Why the Court Should Not Issue a **Preliminary Injunction; directing Defendants to file a response no later than 5/10/2022; setting a hearing on Order to Show Cause on 5/12/2022 at 4:30 PM in Jacksonville Courtroom 10D. The parties are directed to take note of the bolded sections in the Order. See Order for details. Signed by Judge Timothy J. Corrigan on 5/3/2022. (Attachments: # 1 Attachments) (CKM)** (Entered: 05/03/2022) |
|---|---|---|
| 05/04/2022 | 13 | NOTICE of Local Rule 3.02(a)(2), which requires the parties in every civil proceeding, except those described in subsection (d), to file a case management report (CMR) using the uniform form at www.flmd.uscourts.gov. The CMR must be filed (1) within forty days after any defendant appears in an action originating in this court, (2) within forty days after the docketing of an action removed or transferred to this court, or (3) within seventy days after service on the United States attorney in an action against the United States, its agencies or employees. Judges may have a special CMR form for certain types of cases. These forms can be found at www.flmd.uscourts.gov under the Forms tab for each judge. (Signed by Deputy Clerk). (KKH) (Entered: 05/04/2022) |
| 05/06/2022 | 14 | RETURN of service executed on 05/04/2022 by Federal Trade Commission as to Digital Business Scaling LLC, Financial Consulting Management Group LLC, First Coast Matchmakers Inc., First Coast Matchmakers LLC, Prosperity Training Technology LLC, Michael Rando, Valerie Rando, Resource Management Investments, LLC. (AEP) (Entered: 05/06/2022) |
| 05/06/2022 | 15 | RETURN of service executed on 05/05/2022 by Federal Trade Commission as to Elite Customer Services, LLC. (AEP) (Entered: 05/06/2022) |
| 05/10/2022 | 16 | Unopposed MOTION for Miscellaneous Relief, specifically Motion to Set Status Conference and Continue Certain Deadlines by Digital Business Scaling LLC, Financial Consulting Management Group LLC, First Coast Matchmakers Inc., First Coast Matchmakers LLC, Prosperity Training Technology LLC, Michael Rando, Valerie Rando. (Giboney, Pierce) (Entered: 05/10/2022) |
| 05/10/2022 | 17 | NOTICE of Appearance by Latour Rey Lafferty on behalf of Digital Business Scaling LLC, Elite Customer Services, LLC, Financial Consulting Management Group LLC, First Coast Matchmakers Inc., First Coast Matchmakers LLC, Prosperity Training Technology LLC, Michael Rando, Valerie Rando, Resource Management Investments, LLC (Lafferty, Latour) (Entered: 05/10/2022) |
| 05/10/2022 | 18 | NOTICE of Appearance by Pierce Giboney on behalf of Digital Business Scaling LLC, Elite Customer Services, LLC, Financial Consulting Management Group LLC, First Coast Matchmakers Inc., First Coast Matchmakers LLC, Prosperity Training Technology LLC, Michael Rando, Valerie Rando, Resource Management Investments, LLC (Giboney, Pierce) (Entered: 05/10/2022) |
| 05/10/2022 | 19 | NOTICE of Appearance by Ashley Englund on behalf of Digital Business Scaling LLC, Elite Customer Services, LLC, Financial Consulting Management Group LLC, First Coast Matchmakers Inc., First Coast Matchmakers LLC, Prosperity Training Technology LLC, Michael Rando, Valerie Rando, Resource Management Investments, LLC (Englund, Ashley) (Entered: 05/10/2022) |
| 05/10/2022 | 20 | **ORDER granting 16 Defendants' Expedited Unopposed Motion to Convert Preliminary Injunction Hearing into a Status, or Scheduling, Conference and Continue Certain Deadlines; converting 5/12/2022 preliminary injunction hearing to a telephone status conference; scheduling telephone status conference for 5/12/2022 at 5:00 PM. See Order for details and call-in instructions. Signed by Judge Timothy J. Corrigan on 5/10/2022. (CKM)** (Entered: 05/10/2022) |

| 05/10/2022 | 21 | NOTICE of Appearance by Michael R. Freed on behalf of Digital Business Scaling LLC, Elite Customer Services, LLC, Financial Consulting Management Group LLC, First Coast Matchmakers Inc., First Coast Matchmakers LLC, Prosperity Training Technology LLC, Michael Rando, Valerie Rando, Resource Management Investments, LLC (Freed, Michael) (Entered: 05/10/2022) |
| --- | --- | --- |
| 05/10/2022 | 22 | NOTICE of Appearance by Katherine C. Donlon on behalf of Maria Yip (Donlon, Katherine) (Entered: 05/10/2022) |
| 05/10/2022 | 23 | NOTICE of Appearance by Nathan W. Hill on behalf of Digital Business Scaling LLC, Elite Customer Services, LLC, Financial Consulting Management Group LLC, First Coast Matchmakers Inc., First Coast Matchmakers LLC, Prosperity Training Technology LLC, Michael Rando, Valerie Rando, Resource Management Investments, LLC (Hill, Nathan) (Entered: 05/10/2022) |

| PACER Service Center | | | |
| --- | --- | --- | --- |
| **Transaction Receipt** | | | |
| 05/11/2022 10:53:21 | | | |
| **PACER Login:** | ju2108 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:22-cv-00487-TJC-MCR |
| **Billable Pages:** | 9 | **Cost:** | 0.90 |

JS 44 (Rev. 04/21)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

FEDERAL TRADE COMMISSION

## DEFENDANTS

Please see attached Complaint header

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant **Duval County**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Hong Park (202-326-2158); Brian M Welke (-2897); Sana Chaudry (-2679); Federal Trade Commission, 600 Penn Ave. NW, CC-9528, Washington, DC 20580

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

[X] 1 U.S. Government Plaintiff

[ ] 3 Federal Question *(U.S. Government Not a Party)*

[ ] 2 U.S. Government Defendant

[ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 367 Health Care/ Pharmaceutical Personal Injury | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | Product Liability | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [X] 890 Other Statutory Actions |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 550 Civil Rights | [ ] 465 Other Immigration Actions | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

[X] 1 Original Proceeding
[ ] 2 Removed from State Court
[ ] 3 Remanded from Appellate Court
[ ] 4 Reinstated or Reopened
[ ] 5 Transferred from Another District *(specify)*
[ ] 6 Multidistrict Litigation - Transfer
[ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
FTC Act 15 USC §§ 53(b) and 57b; CROA 15 USC §§ 1679-1679j; CCPA 15 USC § 45 note; TSR 16 CFR Part 310; BOR 16 CFR Part 437

Brief description of cause:
Credit repair and money-making opportunity scheme engaged in illegal and deceptive practices.

## VII. REQUESTED IN COMPLAINT:

[ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE
May 2, 2022

SIGNATURE OF ATTORNEY OF RECORD
*/s/ Hong Park*

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.